ALEXANDER H. HOWARD *vs.* GREAT WESTERN INSURANCE COMPANY.

On the issue whether a manufactured substance called patent fuel was comprised within the term coal, in a policy of marine insurance, a witness acquainted with its composition and mode of preparation is competent to testify thereto, in reply to testimony upon the same points, although he never dealt in patent fuel or in coal either as a merchant or an underwriter.

On the trial of an action for a loss under a policy of insurance, written here, between parties residing here, upon a vessel for a voyage from Hamburg to Cardiff and thence to Hong Kong, containing a warranty not to load more than her registered tonnage with coal, which the underwriters defended on the ground of a breach of the warranty, in that she was loaded at Cardiff beyond her registered tonnage with a substance called patent fuel, the judge refused the plaintiff's request for a ruling that whether patent fuel was coal within the meaning of the policy was to be determined by the usage at Cardiff, and ruled that, if the plaintiff relied on a commercial usage to the effect that it was not so, the usage must be shown to have been known to the parties at the time of their contract, or so generally known at that time that they might fairly be presumed to have contracted in view of it. *Held*, that the plaintiff had no ground of exception.

CONTRACT, brought September 20, 1869, by an inhabitant of Maine, against an insurance company established in New York City under the law of the state of New York; to recover for a loss upon a policy of marine insurance negotiated in this Commonwealth by an agent of the defendants to the plaintiff, and

issued by them to the plaintiff under date of December 30, 1863, upon the ship Clara, for a voyage from Hamburg in Germany to Cardiff in Wales, and at and from Cardiff to Hong Kong in China, " warranted not to load more than her registered tonnage with lead, marble, coal, slate, copper ore, salt, stone, bricks, grain or iron, either or all, on any one passage, and not to carry guano or lime." The answer alleged a breach of this warranty. Trial in this court, and verdict for the defendants, before *Wells*, J., who allowed a bill of exceptions of which the following is the substance :

" The vessel loaded at Cardiff with more than her registered tonnage of ' patent fuel,' and upon the voyage thence to Hong Kong suffered the loss to recover for which this suit was brought. The defence relied on was that the article laden on board was coal. The charter party, of which the defendants had no knowledge, provided that the vessel should load with coal or patent fuel, at the charterer's option.

" The plaintiff's evidence contained in depositions was offered, and the defendants were allowed by the court to reserve the right to make any and all objections thereto which they might have made at the time of reading. This evidence tended to show that patent fuel and coal were known to commercial men in England and Cardiff as different articles of commerce ; also that patent fuel was manufactured of fine coal mixed with pitch, tar or other resinous substances, and subjected to heat, and pressed into blocks of various sizes ; that it was made under various patents issued in Great Britain, and had been made for two hundred years ; and that it was used chiefly for export to the East Indies, and had been known to the witnesses in England for the last twenty years.

" The plaintiff offered other witnesses, whose evidence tended to show that it was known prior to 1860 to shipmasters and merchants in England, Asia and the Levant, and to underwriters in Boston six or seven years ago, but not before the date of this policy, as a different article from coal.

" On behalf of the defendants, the only expert introduced by them testified that he had analyzed a piece taken from the out-

side of a block shown by the plaintiff to be the same with which the Clara was laden; and that he had experimented with and made a study of coals and patent fuel, while studying with Professor Playfair of Edinburgh, Scotland, in 1859 and 1860 and 1861. The plaintiff objected to the competency of the witness as an expert, because he had not dealt in the article, or in coal, either as a merchant or underwriter; but he was allowed to testify to its composition, which he stated was the same chemically as coal, the heat having expelled the resinous admixture. To the admission of his evidence the plaintiff excepted. The witness testified only as to the composition and mode of preparation of the article in question; and was admitted upon the ground that the plaintiff had previously introduced testimony to the same point.

" Upon the question of commercial usage the plaintiff requested the following instruction: ' Whether or not the word coal, as used in the policy, includes patent fuel, or whether patent fuel and coal are the same or different articles, is to be determined under this policy by the usage at the port of loading, to wit, Cardiff.' The judge declined so to instruct the jury, but did instruct them as follows: ' The burden being upon the plaintiff to show a strict compliance with the terms of the warranty in the policy, and, it being admitted that the vessel was in fact loaded beyond her registered tonnage, it is incumbent upon the plaintiff to satisfy the jury that the article with which she was loaded was not coal in the sense in which that term was used in the policy. He may do this, either, first, by showing that in fact its character had been so changed, either by the addition of other ingredients than coal, or by the process to which it had been subjected, that the general term coal, according to the common understanding of that name, would not properly apply to or include it; or, second, by showing that by commercial usage the article was known, regarded and dealt with as an article distinct from coal, and not included in the general term coal. But a commercial usage, in order to have that effect, must be not merely a local usage, existing and known only at Cardiff, but must be shown to have been known to the parties at the time the contract was made, or to

have been at that time so generally known that the parties may be fairly presumed to have made their contract in view of its existence. If there was no change in the character of the coal, except that it was put into blocks for convenience of freighting, handling and use, that would not prevent it from being coal, in the absence of any usage treating it as a distinct article of commerce.' To these instructions and refusals to rule and instruct, the plaintiff excepted."

*H. W. Paine & R. D. Smith*, for the plaintiff. The commercial usage of England and Cardiff, as to whether patent fuel and coal are to be regarded as the same or as different articles, is binding on the parties to this policy. They did not contemplate the usages of Maine or Massachusetts or New York, but contracted with reference to the laws and usages of the ports to be visited in the course of the voyage. *Clark* v. *United Insurance Co.* 7 Mass. 365, 369. *Bayliffe* v. *Butterworth*, 1 Exch. 425, 429. *Insurance Cos.* v. *Wright*, 1 Wallace, 456, 485. *Sturgis* v. *Cary*, 2 Curtis C. C. 382. *Barnard* v. *Adams*, 10 How. 270. *Noble* v. *Kennoway*, 2 Doug. 510. *Vallance* v. *Dewar*, 1 Camp. 503. *Maryland Insurance Co.* v *Bossiere*, 9 Gill & Johns. 121. *Hazard* v. *New England Insurance Co.* 8 Pet. 582. *Grant* v. *Paxton*, 1 Taunt. 463. *Planché* v. *Fletcher*, 1 Doug. 251. *Elton* v. *Larkins*, 8 Bing. 198. *Hudson* v. *Ede*, Law Rep. 3 Q. B. 412. 1 Arnould on Ins. (2d Am. ed.) 71 note. *Cobb* v. *New England Insurance Co.* 6 Gray, 192, 200. *Buckle* v. *Knoop*, Law Rep. 2 Exch. 125. *Livingston* v. *Maryland Insurance Co.* 7 Cranch, 506, 539, 544. 2 Greenl. Ev. §§ 251 *& seq. Tidmarsh* v. *Washington Insurance Co.* 4 Mason, 439. *Hazard* v. *New England Insurance Co.* 1 Sumner, 218. *Cuthbert* v. *Cumming*, 11 Exch. 405. *Benson* v. *Schneider*, 7 Taunt. 272. *Taylor* v. *Briggs*, 2 C. & P. 525. *Taylor* v. *Clay*, 9 Q. B. 713. *Adams* v. *Royal Mail Steam Packet Co.* 5 C. B. (N. S.) 492. *Leidemann* v. *Schultz*, 14 C. B. 38. *Robertson* v. *Jackson*, 2 C. B. 412.

The chemist's testimony should have been excluded. It was immaterial to the issue, and was not rendered admissible by the plaintiff's evidence of the methods of making patent fuel.

*B. R. Curtis & W. Curtis*, for the defendants.

CHAPMAN, C. J.* The plaintiff admits that the burden is on him to prove that the article loaded was known in commerce as a different article from that which was bought and sold as coal. But this leaves open the question as to what this difference must consist in. Sometimes there is a difference in the mere name; for the same article often has different names in different places. Articles may also be different as to one class of dealers, while they are the same as to other classes. If for example there had been a warranty against carrying cotton cloth, it would as to an insurer include all cloths made of cotton; while at a retailer's shop calico, gingham, muslin, and a variety of other goods, which consist of cotton cloth, would never be called for by the name of cotton cloth, nor would they be sold by merchants under that name. Or lead may be run into moulds resembling images, for the purpose of avoiding duties, while it remained mere lead as to an insurer. So if coal were broken by a patented machine, and thereby had a peculiar shape, it might well be called "patent fuel," though it should be the same to the insurer and the method of breaking it constituted its only material peculiarity. Illustrations of this character might be multiplied; and they make it apparent that further inquiries than those relating to the difference of the appellation of the article are pertinent.

It was proper to inquire into the materials of which "patent fuel" was originally composed, the process of manufacture, and the substance and character of the finished article, in order to ascertain whether there was any difference material to a contract of insurance. The statements of a witness acquainted with its composition and mode of preparation, and its constituent parts as a manufactured article, were properly admitted.

Under the rulings, the jury must have found that patent fuel was coal, in the sense in which that term was used in the policy; with no change in its character, except that it was put into blocks for convenience of freighting, handling and use; so that it was not different from ordinary coal, with reference to the perils of the sea and the importance of not loading, with it beyond the registered tonnage.

* GRAY, J., did not sit in this case.

The jury were instructed that the plaintiff might show that it was not coal, by showing that its character had been so changed, either by other ingredients than coal, or by the process to which it had been subjected, that the general term coal, according to the common understanding of that name, would not apply to it, or by showing that by commercial usage the article was known, regarded and dealt with as an article distinct from coal, and not included in the general term coal. But a commercial usage, in order to have that effect, must be not merely a local usage, existing and known only at Cardiff, but must be shown to have been known to the parties at the time the contract was made ; or to have been at that time so generally known, that the parties may be fairly presumed to have made their contract in view of its existence. And the court declined to instruct the jury according to the plaintiff's request, that whether " coal," as used in the pol icy, includes " patent fuel," or whether patent fuel and coal are the same or different articles, is to be determined under this policy by the usage at the port of lading, namely, Cardiff.

In contracts of a commercial nature, a reference to usage is implied. *Clark* v. *United Insurance Co*. 7 Mass. 365, 369. When the meaning of a word, used to designate an article of trade, is to be fixed by proof of mercantile usage, it may be by the usage of the trade among merchants dealing particularly in that article. Underwriters insuring by certain words are bound to know the mercantile meaning of the words, and are liable according to that meaning. *Astor* v. *Union Insurance Co*. 7 Cowen, 202. The presumption is, that they mean to deal according to the general usage, if any exists, in relation to the subject matter. It may be local, but must be in force among persons engaged in the trade. Thus it was held that the word " outfits," as applied to a whaling voyage, may acquire by usage a peculiar local meaning, but, if limited to New Bedford only, the usage is not admissible to affect the construction of a policy. *Macy* v. *Whaling Insurance Co*. 9 Met. 354, 363.

When a local usage at a particular port grows out of the pecul iar situation or circumstances of the place, such for example as a peculiar method of managing a vessel, or taking in or discharging

a cargo, some of the cases go to show that the insured makes his contract with reference to what it may happen to be, though he knows nothing about it. But in this case the article called patent fuel has long been prepared by a process which enables proprietors of coal mines to use their fine coal. And its use has extended to different parts of England, and to countries beyond the sea. A usage, relating to the character of such an article as an article of commerce, in order to affect the construction of a policy of insurance, should be known beyond Cardiff, and known so generally that the parties may fairly be presumed to have made their contract in view of its existence.　　　　*Exceptions overruled.*