## RED WING MILLS *v.* MERCANTILE MUT. INS. CO.

*(District Court, S. D. New York.   January 9, 1884.)*

1. SHIPPING — THROUGH BILL OF LADING — INSURANCE — CONSTRUCTION — STATE LINE.
    The words used in insurance contracts are to be understood according to their ordinary scope and meaning, unless a more restricted use is established by general mercantile usage, or expressly brought to the notice of both parties.
2. SAME—TRANSFER OF GOODS.
    Where flour was shipped by the Merchants' Dispatch Transportation Company, at Red Wing, Minnesota, for Glasgow, Scotland, by a through bill of lading of that company and the State Line, and the shipper thereupon effected insurance with the respondents upon a certificate of marine insurance " from New York to Glasgow on board of the State Line," and a portion of the flour, on arrival at New York, was loaded on board the steam-ship Zanzibar, which was not one of the regular steam-ships of the State Line, but of which that line had taken an assignment of a charter-party for a single trip from New York to Glasgow, the charter-party being a contract of affreightment merely, and the possession and the control of the Zanzibar remaining with her owners, and not with the State Line, *held,* that the Zanzibar did not form, even temporarily, a part of the State Line, and that the insurance did not attach, but that the loading on the Zanzibar was a transfer by the State Line of the flour so loaded to another steamer, in accordance with one of the provisions of the through bill of lading.   *Secus,* had the possession and control of the Zanzibar, though for a single voyage only, been in the State Line

In Admiralty.

On the fourteenth of December, 1878, the libelants delivered to the Merchants' Dispatch Transportation Company, at Red Wing, Minnesota, 800 barrels of flour, to be transported from Red Wing to Glasgow, Scotland, and received what is known as a through bill of lading, entitled "The Merchants' Dispatch Transportation Company and the State Line."   On the sixteenth of December the libelants took out a certificate of insurance from the respondents' company, to the amount of $2,800, upon the 800 barrels of flour insured, to be shipped "on board of the State Line, at and from New York to Glasgow, Scotland."   On the arrival of the flour at New York, one of the regular vessels of the State Line having been totally lost, and there being an accumulation of goods, the agents of the State Line, Austin, Baldwin & Co., took to themselves an assignment of a charter-party of the steam-ship Zanzibar, from the agent of the New York Central Railroad Company, who held a charter of the Zanzibar, for a

return voyage to Great Britain, and thereupon, on account of the State Line, Austin, Baldwin & Co. loaded her with wheat and peas in bulk, and other cargo, including 400 barrels of the flour in question. The Zanzibar shortly after sailed from New York and has never been heard from. The claim of the libelants for these 400 barrels of flour was adjusted by the respondents' agents in London as a total loss. Payment, however, was resisted, on the ground that the policy never attached as respects the Zanzibar, because, as alleged, she was not a vessel belonging to the State Line.

The through bill of lading contained, among others, the following clauses:

"(6) It is further agreed that the said Merchants' Dispatch Transportation Company have liberty to forward the goods or property to port of destination by any other steamer or steam-ship company than that named herein, and this contract is executed and accomplished, and the liability of the Merchants' Dispatch Transportation Company, as common carriers thereunder, terminates on delivery of the goods or property to the steamer or steam-ship company's pier in New York, when the responsibility of the steam-ship company commences, and not before. (7) And it is further agreed that the property shall be transported from the port of New York to the port of Glasgow by the said steam-ship company, with liberty to ship by any other steamship or steam-ship company."

The charter-party of the Zanzibar is dated December 18, 1878, and provided that the Zanzibar, classed as 100A11, in measurement 2,245 tons, should proceed from Liverpool to New York, and thence back, with a cargo of provisions and grain or cotton, at a specified rate of freight, to some one safe direct port in the united kingdom of Great Britain and Ireland, etc. On the twenty-eighth of December, the ship being then in New York, all right, title, and interest in the charter-party was transferred to the agents of the State Line. By the terms of the charter-party the navigation of the ship remained entirely under the control and at the expense of her owners, and not of the charterers.

Evidence was given at the trial to the effect that on vessels belonging to regular and known lines of transportation the rate of insurance is less than upon independent vessels. Evidence was also given by several agents of insurance companies that they would not consider a vessel employed upon a single trip, like the Zanzibar, to come within the description of "The State Line" referred to in the certificate of insurance.

*Sidney Chubb*, for libelant.

*Scudder & Carter*, for respondents.

BROWN, J. I do not think that this case should be determined with any reference to what the agents of the insurance companies in New York might consider as coming within the description of "The State Line." The merchants who ship these goods by a through bill of lading, a thousand miles away in the interior, and who deal with the insurance company's agents there, have a right to rely upon the

ordinary meaning and scope of the terms used in the certificate of insurance, unless a more restricted meaning is proved to have been recognized and established by general mercantile usage, or else expressly brought to their notice, neither of which in this case has been proved. This insurance was not upon any particular vessel. It was manifestly intended to be as broad as "The State Line," which was acting in conjunction with the Transportation Company in obtaining goods on through bills of lading. In my judgment, therefore, "The State Line" must be held to embrace all vessels which were navigated under the possession, control, and management of the State Line, whether the vessels were such as existed on the date when the certificate of insurance was issued, or were new vessels introduced into that line afterwards, on board of which the goods might be shipped; or whether the vessels were owned or were merely chartered by that line, either before or after the date of the certificate, provided they were in its possession and control. Nor can I deem it of any consequence that the vessel performed but a single voyage, provided that upon the voyage on which she sailed she was in the possession and under the management and control of the State Line. If so, she was during that voyage a part of the State Line, and was one of the vessels of the State Line *pro hac vice.* If, on the other hand, the vessel which carried the flour was not in the possession or under the management or control of the State Line, then the case would be that of a carriage of the goods by another steamer to which the State Line had transferred them.

The express conditions of the through bill of lading gave the State Line the right "to transfer the goods to any other steam-ship or company;" and if the State Line did thus transfer the carriage of 400 barrels, a part of this consignment, to any other vessel, in accordance with this provision, it seems plain that the certificate of insurance would not attach to the latter vessel. The existence of this provision in the through bill of lading was notice to the libelants of the necessity of watchfulness on their part in respect to any transfer of the goods by the State Line to any other steamer, and of the need of provision for such a contingency in their insurance.

After the loss of the Zanzibar was suspected, some correspondence between the parties to this suit arose on that very point, from which it is clear that the libelants were aware of this contingency in regard to the insurance, and of the necessity of an assent by the insurance company in order to hold them as respects any other vessel to which the flour or any part of it might have been transferred by the State Line.

The terms of the charter of the Zanzibar, of which the agents of the State Line took the transfer, are such as show clearly that the State Line did not acquire the possession or have any control of the navigation of the latter vessel. It was a contract of affreightment only, and the assignment of it to the agents of the State Line gave

them the right only to lade the ship with such and such goods. The possession and the responsibility and control of the navigation of the Zanzibar remained solely with her general owners. And it was under such a charter-party that the 400 barrels in question were laden on board the Zanzibar by the State Line. This, in my judgment, was a transfer of so much of this flour to another steamer within the terms of the clause of the through bill of lading above quoted. The State Line had no possession of the Zanzibar and no control over her. They loaded the flour on board of her, as any merchant might have done, at a specified rate of freight, for which, under the terms of the charter-party, the vessel and her owners contracted to deliver these goods at Glasgow.

On the ground, therefore, that neither the possession nor the control of the Zanzibar upon this voyage was in the State Line, I must hold that the Zanzibar was not one of the vessels of the State Line, even temporarily or *pro hac vice;* that the certificate of insurance, therefore, did not attach; and that the libel must be dismissed, with costs.