Filed May 28, 1891.

---

### No. 147.

### FLEMING ET AL. *v.* MCCLAFLIN ET AL.

APPELLATE COURT.—*Motion to Suppress Deposition or Amend a Pleading.*— A motion to suppress a deposition or to amend a pleading can not be assigned as an independent error in the Appellate Court.

SAME.—*Demurrer.—Exception.—Failure to Take.*—On appeal it must appear of record that an exception was taken to the ruling on a demurrer to make such ruling available for review.

EXPERT EVIDENCE.—*Proof of Pedigree of Horse.*—A witness who has had experience in the breeding and in the pedigrees of horses may testify as to the pedigree of a horse, although he obtained his knowledge of such pedigree from trotting registers, stud books and advertisements.

NEW TRIAL.—*Cumulative Evidence.*—A new trial will not be given because of newly discovered evidence which would probably not change the result of the trial.

SAME.—*Diligence.*—A party asking a new trial because of newly discovered evidence must show that he used due diligence to discover it before the trial.

From the Fountain Circuit Court.

*W. L. Rabourn*, for appellants.

*W. B. Durborow*, for appellees.

ROBINSON, J.—The appellants, who were the plaintiffs in the court below, commenced this action against the appellees upon a promissory note which appellants held by assignment.

The appellees answered in four paragraphs: 1st. General denial. 2d. That the note was given for the unpaid balance of the purchase-price of a stallion, named Bonner, sold the appellees by Nicholas Lape, the original payee in the note, warranted to be twelve years of age, and to have the following pedigree: "Bonner was sired by a stallion called Robert Wilson of Kentucky, and Robert Wilson was sired by Rysdyke's Hambletonian;" that appellee believed the warranty to be true, but it was false. The 3d paragraph contained similar averments to the 2d, in its general statements, and alleged false and fraudulent representations by the seller regarding the age and pedigree of the horse; that appellees relied thereon, and that they were false. 4th. Payment.

Appellants demurred to the second and third paragraphs of the answer, which demurrer was overruled, and then replied to the answer by general denial.

The cause was tried by a jury, resulting in a verdict for the appellees. There was a motion for a new trial, which was overruled and excepted to.

The errors assigned by the appellants are:

1st. The court erred in overruling appellants' demurrer to the second paragraph of appellees' answer.

2d. The court erred in overruling appellants' demurrer to the third paragraph of appellees' answer.

3d. The court erred in overruling appellants' motion to suppress the deposition of M. A. Randall, and parts thereof included in appellants' motion filed March 5th, 1889.

4th. The court erred in sustaining the appellees' motion to amend the second and third paragraphs of the answer.

5th. The court erred in overruling appellants' motion to

suppress the deposition of M. A. Randall, filed May 8th, 1889.

6th. The court erred in overruling appellants' motion for a new trial.

The third, fourth and fifth assignments of errors are proper causes for a new trial, and were made such in the motion, and properly come under the error assigned in overruling the motion for a new trial.

We can not consider the first and second assignment of errors, to wit, error in the court in overruling the demurrer to the second and third paragraphs of the answer. There is no available error in this court saved in the record. From the record it does not appear that the ruling of the court on the demurrer to these answers was excepted to.

The fifth, sixth and seventh causes for a new trial raise the question of the alleged error in the trial court in permitting the appellees to read in evidence certain parts of the deposition of M. A. Randall on the trial of said cause, taken on behalf of the appellees, and in overruling appellants' motion to suppress said deposition, and suppress and strike out certain parts thereof.

The testimony of this witness, on direct examination, contained twenty-two questions and answers.

The court sustained appellants' motion as to all of the questions and answers on direct examination except 1, 2, 3, 4, 5, 6, 10, 11, 12, 13, 20, 21 and 22. There was no objection to other parts of the deposition, and these questions and answers, with the cross-examination and re-direct examination, were read in evidence on the trial of the cause.

The first four questions in the direct examination were merely preliminary and introductory, and, in connection with the fifth, show the qualification of the witness to testify as to facts afterwards elicited, and to show that upon questions concerning the pedigree in horses the witness is an authority.

The witness then answered the questions hereinafter set out:

" Ques. 5. If you know of a certain horse known as Rysdyke's Hambletonian you may so answer? Ans. I know of him through trotting registers, through stud books, through advertisements, and through an intimate acquaintance with his get.

" Ques. Where was said Rysdyke's Hambletonian sired and kept? Ans. In Orange county, New York, all his life; was never out of the county.

" Ques. 10. What relation, if any, was this horse, Robert Wilson, to Rysdyke's Hambletonian? Ans. None at all.

" Ques. 12. What acquaintance had you with the horse known as Hamerick's Hambletonian? Ans. I saw him exhibited several times at the State fair is all.

" Ques. 13. What, if any, relation was the horse known as Hamerick's Hambletonian to Hambletonian? Ans. None at all.

" Ques. 20. What, if any, acquaintance have you with horse known by the name of Bonner? Ans. There are several horses in the Register called Bonner; there is one Satellite; but the only one I know is one Robert Bonner got by a horse called Mambennello; he was bred in Bourbon county, Kentucky; stood a while there; was brought to Rush county, and stood a while, and was taken back to Bourbon county, and died there; I brought him myself to Rush county.

" Ques. Was this Bonner ever owned by W. P. Swain? Ans. No, sir."

The appellants assail the admission of this evidence with much vigor, and ask us to compare the evidence that was permitted to go to the jury with the suppressed part of the deposition. That we can not do. The suppressed part of the evidence is not in the record. The question must be determined by the evidence that the court permitted to go to the jury. From the testimony of this witness, in answer to questions one, two, three and four, which are preliminary and introductory, it appears that the witness resided in the

city of Indianapolis, and had been engaged for ten years in the publication of the Western Sportsman ; was author of the American Pacing Register, which he was compiling for publication; that he had experience in the pedigree of horses in writing about them, and from being in the horse business for at least forty years. To that part of the testimony of this witness in which he testifies from personal knowledge there can be no objection, but the objection is made to the portion of the testimony in which the witness testifies to his experience, knowledge and skill in the breeding of horses, and in the pedigree of horses. Upon the facts stated in his testimony, the appellees contend that the evidence was admissible for the reason, among others stated, that it was expert testimony, or that it was evidence of facts which are the result of scientific knowledge, and was not incompetent as being hearsay evidence or information gleaned from books or records.

In arriving at a conclusion upon this question we think it proper to take into consideration the fact that the subject of pedigree in horses, the breeding of horses, their speed, sire, improvement in the stock, and other matters connected with their development and breeding, has become a business of much importance; that with many it has become a profession, requiring experience, skill and knowledge ; and that breeders, agriculturists and stockmen are largely engaged in it; that journals are published, books written, and records and registers are kept to promote the business; and that it requires skill, knowledge and science to understand and become experts in the business, which are obtained not only from personal experience, but from books, journals, records, registers and other sources of information. A medical expert may testify as to a knowledge of facts cited by medical works, and yet the books from which he obtained the knowledge of the facts about which he testifies are not admissible. Experts may testify as to any art, science, trade or mystery.

In the case of *Indiana, etc., R. W. Co.* v. *Hale,* 93

Ind. 79, it is said: " The general rule is that a witness must not give his opinion, but must testify as to facts. To this rule there are some exceptions. The opinion of an expert in any art, science, trade, profession or mystery, may be given where it is proper for the decision of a question relating to the issue in a case."

In *Commonwealth* v. *Sturtivant*, 117 Mass. 122, cited in this case, it was said: " The exception to the general rule that witnesses can not give opinions, is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill or learning; but includes the evidence of common observers, testifying to the results of their observation made at the time in regard to common appearances or facts, and a condition of things which can not be reproduced and made palpable to a jury."

It is further said in the case of *Indiana, etc., R. W. Co.* v. *Hale, supra:* " The opinions of experts may be taken in matters of art, science, etc., because, even though they be able to give the facts, special knowledge is required to draw correct conclusions therefrom."

In the case of *City of Fort Wayne* v. *Coombs*, 107 Ind. 75, Judge ELLIOTT, in delivering the opinion, quotes with approval the following cases: " Whether he is competent to testify at all as an expert, is a question for the court. But after he has been allowed to testify, the weight of his evidence is a question for the jury." *Davis* v. *State*, 35 Ind. 496.

" It is the doctrine of the authorities that study of a business without practical experience will qualify a witness as an expert. *Howard* v. *Great Western, etc., Co.*, 109 Mass. 384; *Swett* v. *Shumway*, 102 Mass. 365.

" It is also held that where a witness has studied an art or science he may be deemed an expert in a kindred art or science. *Barnes* v. *Ingalls*, 39 Ala. 193."

In the case of *Slocovich* v. *Orient Mut. Ins. Co.*, 108 N. Y. 56, it was held that an expert called to testify as to the value of a vessel is not confined to an opinion based upon

his personal knowledge; he may speak from information obtained from the general records, containing description of vessels used and resorted to by ship brokers and owners and underwriters in their business.

The witness in the case *Slocovich* v. *Orient Mut. Ins. Co.,* *supra,* was a ship broker, and testified to the value of a ship he had seen but once ten years before, but knew of her age, tonnage and condition from ship records, which were the only source of information.

The court says in the opinion : " It is not a sufficient objection to the competency of this witness that he had no personal knowledge of the ship. An expert is qualified to give evidence as to things which he has never seen. He may base an opinion upon facts proved by other witnesses, or upon facts assumed and embraced in the case. Questions may be put to him assuming the facts upon which he is asked to base his judgment and express an opinion. In this case the question put to the witness might have assumed the age, tonnage, character, condition and quality of the vessel, and he could have been asked to give an opinion as to her value based upon such facts ; or the facts relating to the vessel appearing in the books and records which he referred to and which were also proved upon the trial, might have been assumed in the question put to the witness and he asked to give an opinion as to her value based upon them."

The statement in this case upon the question of the competency of the evidence of the witness Randall very strongly sustains the ruling of the trial court in the case at bar.

The evidence of this witness was important and material to the issue under the second and third paragraphs of the answer, and went directly to the averments in the answers that the pedigree of the horse was not truly stated ; that the stallion was not sired by Robert Wilson, of Kentucky, but by another and different horse ; that said stallion was not a descendant of Rysdyke's Hambletonian, and was not of the Hambletonian stock, or breed, of horses.

Other questions, both in favor of and against the admissibility of this evidence, are presented in argument, but having arrived at the conclusion that it was admissible on the ground indicated, it becomes unnecessary to consider them. The court did not err in its rulings on this evidence.

The appellants call our attention to other alleged incompetent evidence admitted upon the trial. No objection is pointed out to the evidence; no reason whatever is given, and no argument is made, as to why error was committed in admitting it. As to this evidence, no question is before this court. *Nowlin* v. *Whipple,* 89 Ind. 490; *Irwin* v. *Lowe,* 89 Ind. 540; *Liggett* v. *Firestone,* 102 Ind. 514.

The appellants assign, as one of the causes for new trial, that of newly discovered evidence. The newly discovered evidence upon which appellants base this cause in the motion for a new trial was the evidence of three persons, to wit, H. R. Cadwallader, William Sharpe, and Dr. T. B. Campbell. From the record it appears that the evidence Cadwallader would give was known to appellants on the morning of the second day of the trial, and that Dr. Campbell had been subpœnaed as a witness in the case. It does not appear that appellants took any steps to procure the attendance of said witnesses, other than by service of subpœna on Dr. Campbell, or took any steps to delay the case, to procure the testimony of said witnesses, or took any steps to enforce the attendance of said witnesses.

William Sharpe, in his affidavit, states the evidence he would give. It was merely cumulative. It does not appear that the evidence would probably change the result, or that it would have in any way influenced a different result had it been introduced, and appellant does not attempt to show in what way this evidence would have probably changed the result or that it in any way influenced a different verdict. There was no error in the ruling on this cause in the motion for a new trial. *Simpson* v. *Wilson,* 6 Ind. 474; *Bronson* v.

*Hickman,* 10 Ind. 3; *State, ex rel.,* v. *Clark,* 16 Ind. 97; *Hines* v. *Driver,* 100 Ind. 315.

The court, of its own motion, gave the jury nine instructions, which were all the instructions given in the cause. The alleged error in these instructions is also assigned as cause for a new trial. The instructions, taken together, contain a correct statement of the law and embrace all the issues in the cause. There is no valid objection made to them, or any one of them; indeed the appellant makes but little attempt to assail them.

The evidence tended to sustain the verdict.

We have now disposed of all the questions presented in the argument that have been saved in the record. There is no error in the case for which it should be reversed, but the case should be affirmed, and is, therefore, affirmed, at the costs of the appellants.

Filed May 28, 1891.