MARTIN L. RICKERSON, Appellant, *v.* THE HARTFORD FIRE INSURANCE COMPANY, Respondent, Impleaded with THE WASHINGTON LIFE INSURANCE COMPANY.

1. FIRE INSURANCE — AMBIGUOUS DESCRIPTION OF PREMISES IN POLICY. If the meaning of the words employed by a fire insurance company in its policy to describe the insured premises is ambiguous, that meaning should be given which is most favorable to the insured, as, *e. g.*, where a policy describes the premises as the building and additions at a certain street number, and it appears that there were two buildings owned by the insured known by that street number, one being on the front and the other at the rear of the lot, connected externally by an intervening structure, rendering it doubtful, from a reading of the policy and the situation of the property and the surrounding circumstances, whether the property insured embraced all the buildings or only a part.

2. WRITTEN CONTRACT — EVIDENCE AS TO INTENT. One party to a written contract cannot state, as a witness against the other party, how he understood it when he signed it, nor testify as to its meaning or as to his intent.

3. INSURANCE POLICY — INTENT OF THE INSURER — EVIDENCE. In an action upon a fire insurance policy, a representative of the insurer cannot testify, against the objection of the insured, what he meant or intended by ambiguous words describing the insured premises, inserted by him in the policy.

4. CUSTOM — EVIDENCE TO ESTABLISH. A custom or usage is a matter of fact, not of opinion, and must be shown by those who have observed the method of transacting the particular kind of business as conducted by themselves and others; questions calling for what a witness would do, and not for what he had done or seen done, are not competent to establish a custom.

5. FIRE INSURANCE — DESCRIPTION OF PREMISES — CUSTOM. A custom or usage of fire insurers, in describing insured buildings in their policies, depending upon whether situated on the front or rear of a numbered street lot, even if such a custom exists and is of a nature recognized by the law, is not binding upon the insured, where it is not shown either to have been known to him at the time of making the contract of insurance or to have been so generally known as to raise a presumption that the parties had it in mind at that time.

*Rickerson* v. *Hartford F. Ins. Co.*, 78 Hun, 616, reversed.

(Argued April 13, 1896 ; decided April 28, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon

an order made May 18,.1894, which affirmed a judgment in favor of the defendant, The Hartford Fire Insurance Company, dismissing the complaint, entered upon a decision of the court on trial at Circuit without a jury.

This action was founded upon a policy of fire insurance issued to P. Sammet and J. Alexander by the Hartford Fire Insurance Company, payable to the Washington Life Insurance Company as mortgagee and as its interest might appear, upon premises known as number 160 Mott street in the city of New York. The policy was dated February 28, 1890, on which day Sammet and Alexander became the owners of the property insured and gave a mortgage thereon to the Washington Life Insurance Company to secure the payment of $17,000, with a covenant to keep the buildings on the premises insured against loss by fire for the benefit of said mortgagee. On the same day and through the same insurance agency, two policies of insurance were procured by the mortgagors, payable in the first instance to the mortgagee, upon the property in question, for $6,000 each, one issued by the Hartford Fire Insurance Company and the other by the German-American Insurance Company. On the first of May, 1890, Sammet and Alexander transferred the property to the plaintiff by a conveyance which described the premises by metes and bounds, and also as "known and distinguished as number one hundred and sixty Mott street," being the same description that there was in the mortgage. At the same time, both policies were transferred to the plaintiff, and the change of interest was duly noted and indorsed thereon by the insurance companies.

The trial of the action was commenced before a jury, but, at the close of the evidence given in behalf of the plaintiff, the jury was discharged under an agreement between counsel for the respective parties that the question involved was "purely a question of law." The trial court found that, at the date of the insurance, "there were two buildings on the lot known as No. 160 Mott street, New York city, viz., a three-story brick building, fronting on the street, twenty-five

feet wide by forty-six feet deep, with an extension, and a five-story brick building twenty-four feet wide and thirty-nine feet deep." On the 13th of December, 1890, a fire occurred that injured the three-story building to the amount of a few hundred dollars, but which injured the five-story building to the amount of several thousand dollars. The insurance companies repaired the damage to the former only, and refused to pay any part of the damage to the latter.

The complaint was dismissed for the reason that the policy did not cover the rear building, and that the defendant had fulfilled its contract by repairing the damages to the front building. From the judgment of the General Term affirming the judgment rendered at the Circuit the plaintiff appealed to this court.

*George Richards* and *Thomas McAdam* for appellant. It was error to allow Coit to say what structure he intended to cover by the policy. (1 Rice on Evid. 304, 305; Abbott's Tr. Evid. 294; *Engelhorn* v. *Reitlinger*, 122 N. Y. 76; *Reynolds* v. *C. F. Ins. Co.*, 47 N. Y. 605.) Alleged customs among insurance men as to what they consider are one building or one risk, or as to what they consider the proper way to write descriptions of property, are inadmissible. (*G. A. Ins. Co.* v. *C. F. Ins. Co.*, 95 Ala. 469; *Hill* v. *H. Ins. Co.*, 10 Hun, 26; *Lamb* v. *C. B. Ins. Co.*, 16 Ins. L. J. 126; *Pohalski* v. *M. L. Ins. Co.*, 56 N. Y. 640; *W. F. Ins. Co.* v. *Davidson*, 30 Md. 104; *Walls* v. *Bailey*, 49 N. Y. 464; *Brown* v. *S. N. Ins. Co.*, 61 N. Y. 336.) The description in the policy and binding slip cannot be legally construed to cover front only. (*Herrman* v. *M. Ins. Co.*, 81 N. Y. 184; *Castellain* v. *Preston*, L. R. [11 Q. B. D.] 380; May on Ins. § 420; 1 Pars. on Ins. 518; *Ionides* v. *P. F. & M. Ins. Co.*, L. R. [7 Q. B.] 517; *Lipman* v. *N. F. Ins. Co.*, 121 N. Y. 454; *Thompson* v. *Adams*, L. R. [23 Q. B. D.] 361; *Audubon* v. *E. Ins. Co.*, 27 N. Y. 216; *Harron* v. *Ins. Co.*, 88 Cal. 6; *O'Brien* v. *Mayor, etc.*, 139 N. Y. 588; *Burr* v. *B. Ins. Co.*, 16 N. Y. 271; *Rutherford* v. *Tracy*, 48 Mo. 325.) The

Pecks were agents for the insurance companies. (*F. Ins. Co.
v. Assn.*, 43 N. J. L. 652 ; *Redstroke* v. *C. Ins. Co.*, 44 N.
J. L. 300 ; *McArthur* v. *Association*, 73 Iowa, 336 ; *Arff* v.
*S. F. Ins. Co.*, 125 N. Y. 57.) The defendant could not
escape .its obligation to indemnify the plaintiff for the
damage to the front, except by paying the cash value,
or by giving a notice of an election to repair. (Ostrander
on Fire Ins. § 177 ; *Harrington* v. *Ins. Co.*, 5 N. Y. S.
R. 417 ; *Daul* v. *F. Ins. Co.*, 35 La. Ann. 98 ; Biddle
on Ins. §§ 1157, 1174 ; Wood on Fire Ins. § 130 ; *N. A.
Ins. Co.* v. *Hope*, 53 Ill. 75 ; *Haskins* v. *H. Ins. Co.*, 5 Gray,
432 ; *Morrell* v. *I. F. Ins. Co.*, 33 N. Y. 429 ; *Wynkoop* v.
*N. F. Ins. Co.*, 91 N. Y. 478 ; *Heilmann* v. *W. F. Ins. Co.*,
75 N. Y. 7 ; *Hastings* v. *W. F. Ins. Co.*, 73 N. Y. 141 ; *Gun-
ther* v. *Ins. Co.*, 34 Fed. Rep. 501 ; *Foster* v. *Ins. Co.*, 2 Gray,
216.)

*William D. Murray* for respondent. All of the evidence to
which objection was made was admissible as it was introduced
to place the court in the position of the contracting parties,
not to vary the terms of the written contract, but, an ambi-
guity having been raised by the plaintiff, to enable the court to
interpret the contract in the light of surrounding facts as they
existed at the time of its execution. (*Griffiths* v. *Harden-
bergh*, 41 N. Y. 469 ; *French* v. *Carhart*, 1 N. Y. 102 ; *M.
P. Co.* v. *Moore*, 104 N. Y. 680 ; *M. L. Ins. Co.* v. *F. S. S.
& G. S. F. R. R. Co.*, 139 N. Y. 146 ; *Sweet* v. *Tuttle*, 14 N.
Y. 471 ; *Groves* v. *Rice*, 148 N. Y. 232 ; *Sanders* v. *Cooper*,
115 N. Y. 288.) The point that the description in the policy
and binding slip cannot be legally construed to cover front
only is untenable. (*Burr* v. *B. Ins. Co.*, 16 N. Y. 274 ;
*English* v. *B. F. Ins. Co.*, 55 Mich. 273 ; *Hewes* v. *A. Ins.
Co.*, 126 Mass. 389.)

Vann, J. When the policy in question was issued the
premises " known as No. 160 Mott street " consisted of a strip
of land twenty-five feet wide, fronting to the north on said
street, by one hundred and eight feet deep, upon which were  ·

certain erections, claimed by the plaintiff to have been three connected structures, divided only by interior partition walls with openings between, but which the defendant claims were two separate and independent buildings. In front was a brick building, worth $5,000, the main part of which was three stories high, and as wide as the lot, but the back part was only two stories high, and not as wide as the lot. In the rear was a five-story brick building, worth $7,000, of the same width as the lot. Between these two buildings was a stable, one story high, the front wall of which was the rear wall of the front building, and the rear wall of which was the front wall of the rear building. It was covered with boards, and boards were also nailed up on the east side. The west wall was the wall of the building on the next lot. The buildings thus formed a continuous structure, extending from the street to the rear line of the lot; and while there was no door between the stable and either building to the front or rear thereof, there was a window communicating with each. The stable and the rear part of the front building were not as wide as the lot, and this left an open space on the east side, known as " the yard." There was an arched passage or alleyway under the east side of the front building, on the ground floor, extending from Mott street to the yard, with a door therefrom opening into the street. The only method of reaching the rear building was by entering this door, passing through the alleyway into the yard, and crossing over it to the rear building, which communicated with no street except Mott street, and had no outside doors except those opening into the yard. The main floor of the front building was leased to one person, who occupied it for a saloon, and the upper part to another, who sub-let it for tenements. The rear building was leased and occupied by one person, who used the main floor as a salesroom and the upper floors for storing, upholstering and varnishing furniture. It had no steam or other power to run machinery, but frames made elsewhere were first stored in the basement, then taken to the upper floors to be upholstered and varnished, and after that brought down to the main floor for exhibition and sale.

The most of the sales were made through traveling agents, by means of photographs, but customers also came to the sales-room to examine and purchase furniture. The stable was used by the tenant of the rear building. Water closets in the back part of the front building were used by the tenants of both buildings; but there was no other use in common of any other part of the premises, except the alleyway, which had a door opening into the saloon, and the tenants of the rear building had a key to the door opening from the alleyway into Mott street. There was a continuous and independent boundary wall on the lots adjoining to the east and west of the lot in question, extending its entire length, without doors, windows or openings of any kind. The entire property, including both buildings, was known as number one hundred and sixty Mott street.

The application for insurance was very brief, consisting mainly of the names of persons desiring insurance, and a description of the property to be insured, as "160 Mott," occupied for "stores and dwellings." The company con-sulted its insurance map before issuing the policy, and thus learned that there were two buildings upon the property, and the general location of each. It also learned the same facts from the clerk who delivered the application. The policy describes the property insured as "the brick building and additions, including gas, steam and water pipes, yard fixtures, railings, stoops and sidewalks in front of, and all fixtures con-tained in or attached thereto, or under sidewalk thereof, situate No. 160 Mott street, city of New York, occupied for stores and dwellings. Loss, if any, payable to the Washington Life Insurance Company of New York, mortgagee." In attempt-ing to analyze this description the first words that attract attention are "the brick building and additions." The words "brick building" apply with equal force to the structure in front and to that in the rear, while the word "additions" is somewhat ambiguous, but the use of the plural form is not without significance as it calls for more than one addition. "Yard fixtures" apply to one building as well as to the other,

while " No. 160 Mott street" applies to both and is the funda-
mental, if not the controlling, part of the description.
" Stoops" applies to neither building, unless the steps extend-
ing from the yard to the door entering upon the main floor
of the rear building are covered by that word. " Stores"
apparently includes both buildings, if a saloon, or a manufac-
tory with a salesroom, can either be properly called a store.
As more than one store is called for by the plural form, unless
both are included, the meaning of the term is uncertain.
" Dwellings." applies to the front building only, as no part of
the rear building was used as a habitation.

· We thus have a policy which, if it had been read before the
fire by a person standing upon the premises and familiar with
the buildings and the way they were occupied, would leave
him in doubt whether the property insured embraced all the
buildings or only a part. For this ambiguity the company is
responsible because it prepared and executed the contract, and
the language used is wholly its own. While it is the duty of
the court to so construe the policy as, if possible, to give effect
to every word used, if the sense in which they were used is
uncertain and the meaning is ambiguous, that meaning should
be given which is most favorable to the insured. (*Herrman*
v. *Merchants' Insurance Co.*, 81 N. Y. 184, 188; *Allen* v.
*St. Louis Insurance Co.*, 85 N. Y. 473, 477; *Kratzenstein* v.
*Western Assurance Co.*, 116 N. Y. 54, 59; *Marvin* v. *Stone*,
2 Cow. 806.) As said by Mr. May in his work on Insurance,
" No rule, in the interpretation of a policy, is more fully
established, or more imperative and controlling, than that
which declares that, in all cases, it must be liberally construed
in favor of the insured, so as not to defeat without a plain
necessity his claim to the indemnity, which, in making the
insurance, it was his object to secure. When the words are,
without violence, susceptible of two interpretations, that
which will sustain his claim and cover the loss must, in prefer-
ence, be adopted." (May on Insurance, § 175.)

The trial court, however, resolved the doubt in favor of the
insurer, as it found that the company " intended to insure
40

and did insure only the three-story brick building situate on the front of the lot No. 160 Mott street in the city of New York," and that it "did not intend to insure and did not insure the five-story brick building situate on the rear of the lot No. 160 Mott street, New York city." While this was found, in form, as a conclusion of law, it embraced a question of fact also. Witnesses had been called by both sides to show the situation of the property, the way it was occupied and the circumstances surrounding the parties when they made the contract. The evidence permitted different inferences as to what facts and circumstances were known and understood by the parties when the policy was issued, and their intention thus became, to some extent, a question of fact, dependent upon those inferences. Therefore, when the trial judge found that the defendant intended to insure and did insure the front building only, it decided a question both of fact and law. In finding the fact, it is reasonable to presume that he was influenced by the testimony of the manager of the defendant in relation to that subject. He was asked : " When your company issued this policy on which this action is brought, which building did you intend to insure ? " This was objected to as "incompetent, irrelevant and immaterial, and as calling for a conclusion ; " but the objection was overruled and the plaintiff excepted. The witness answered, in substance, that he intended to insure the front building only. He was then asked : " Did you intend to insure more than one building ? " and, subject to the same objection, ruling and exception, he answered " No." The witness was thus permitted to testify to the secret operation of his own mind, although it had not been communicated to the other party to the contract. He wrote the policy and countersigned it, and in doing so stood for the company. When the court allowed him to state his intention in issuing the policy, it virtually permitted one party to a written agreement to state what he meant by it, against the objection of the other. The writing, itself, was the best evidence of the intent and meaning of the company. As its meaning was ambiguous, evidence was properly received to

place the court in the position of the parties and enable it to appreciate the force of the words they used in reducing the contract to writing. (*Thomas* v. *Scutt*, 127 N. Y. 141.) It then became the duty of the court, sitting without a jury, to decide what the parties, thus situated, meant by the language employed. (1 Greenleaf's Evidence, § 295a.) But one party to a written contract cannot state how he understood it when he signed it, nor testify as to its meaning or as to his intent. (*Taft* v. *Dickinson*, 6 Allen, 553, 555 ; *Davis Sewing Machine Co.* v. *Stone*, 131 Mass. 384 ; 1 Rice on Evidence, 304.) That would be a violation of the rule that the writing is the best evidence and would tend to destroy the effect of the promise. What the parties intended should have been gathered from the contract, read in the light of the circumstances surrounding them when they used the doubtful words. Parol evidence was not admissible to show what either party secretly intended, as that would add to or take from the writing, which is presumed to express the intention of both.

The secretary of the Niagara Fire Insurance Company was called by the defendant as an insurance expert and asked: "Where there are two buildings on a single lot, one used as a dwelling and store, the other used for some manufacturing purpose, one on the front lot and one on the rear, how would you describe in the policy the building situate in the front?" This was objected to by the plaintiff as incompetent, irrelevant and immaterial, but the objection was overruled, an exception taken and the witness answered: "Simply describe it, situate number so and so in the street or thoroughfare." He was then asked: "How would you describe the building situate in the rear?" and under objection and exception he answered: "Describe it as situate in the rear lot." The object of this evidence was to show that a custom prevailed in the insurance business as to the manner of describing certain kinds of property. The usage of a particular business "when it is reasonable, uniform, well settled, not in opposition to fixed rules of law, not in contradiction of the express terms of the contract, is deemed to

form a part of the contract and to enter into the intention of the parties." (*Walls* v. *Bailey*, 49 N. Y. 464, 469.) The custom, however, must be shown to have been known to the parties when the contract was made, or to have been so generally known as to raise a presumption that they had it in mind at that tine. (*Howard* v. *Great Western Ins. Co.*, 109 Mass. 384, 389; *Gabay* v. *Lloyd*, 3 B. & C. 793; *Bliven* v. *New England Screw Co.*, 23 How. [U. S.] 420, 431; *Barnard* v. *Kellogg*, 10 Wall. 383; May on Insurance, § 179; Arnould on Insurance, 65; Starkie on Ev. 637; 2 Parsons on Contracts, 541.)

No evidence was given to show that the alleged usage was general, or even that it prevailed in a particular locality, or that the plaintiff or his assignors had any knowledge of it. As the questions objected to did not call for what the witness had done, or had seen done, but what he would do, they were not competent to establish a custom. Usage is a matter of fact, not of opinion, and must be shown by those who have observed the method of transacting the particular kind of business as conducted by themselves and others. (*Mills* v. *Hallock*, 2 Edw. Ch. 652; *Haskins* v. *Warren*, 115 Mass. 514, 535; *Chesapeake Bank* v. *Swain*, 29 Md. 483, 498; *Garey* v. *Meagher*, 33 Ala. 630; 2 Rice on Ev. § 349.) But even on the assumption that a custom existed, neither the plaintiff nor his predecessors were bound by it, because it was not shown to have been generally known, or that it was known to either of them. As was said by this court in *Harris* v. *Tumbridge* (83 N. Y. 92, 100), "a custom or usage which binds the parties to a contract does so only upon the principle either that they have knowledge of its existence or that it is so general that they must be supposed to have contracted with reference to it."

We think that the evidence above referred to was improperly received and that the judgment appealed from should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.