ANDRE W. PEARSON, Plaintiff, *v.* MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, INC., Defendant.

Supreme Court, New York County, May 24, 1934.

*Davies, Auerbach & Cornell,* for the plaintiff.

*Cabell, Ignatius & Lown,* for the defendant.

ROSENMAN, J. This is an action by the beneficiary against an insurance company to recover the face value of a life insurance policy. Payment is resisted on the ground that the policy lapsed because of non-payment of premium. The policy is a Massachusetts policy, issued on October 24, 1929. The first annual premium of $139.32 was paid. The second annual premium, due October 24, 1930, has not been paid. On January 22, 1930, a dividend was declared by the defendant, payable on the anniversary dates of policies in force during that year. In accordance with this resolution, a dividend of $37.38 on this policy was applied on October 24, 1930, to the annual premium of the insured. The insured died December 19, 1930, less than three months after the anniversary date.

The policy provided for three options as to the method of payment of premium, viz., annually in the sum of $139.32, semi-annually in the sum of $71.10, or quarterly in the sum of $35.94. The insured had selected the option of annual payments.

The policy also provided for four options as to how the dividends were to be used, viz.: Option A, to be paid to the insured in cash; option B, to be applied in reduction of premiums; option C, to purchase paid-up additions to the policy, reserving to the insured the right to surrender for cash; or option D, to be left with the company to accumulate at interest, subject to the order of the insured. It was specified in the policy that if no election be made prior to any anniversary, the dividend for that anniversary be held by the company to accumulate. In other words, in the absence of contrary choice, option D would be followed. The insured had selected option B, viz., to have the dividends applied in reduction of premiums.

The policy contained among its non-forfeiture provisions a clause reading as follows:

" PAYMENT OF PREMIUMS FROM DIVIDEND ACCUMULATIONS.

" If a premium hereunder is not paid at the expiration of the grace period, and there are dividend accumulations to the credit of the policy they shall be used to pay the overdue premium if sufficient for the purpose, otherwise they shall be used to pay the largest installment of premium, shown by the policy, for which such accumulations may be sufficient, and thereafter the premium on this policy shall be payable in like installments, unless a request

for change in due form shall be made. In no case shall an amount of dividend accumulations less than a quarterly installment of premium be applied in payment of premium unless the balance of premium shall have been paid. The insured will forthwith be notified of the amount of the accumulations used and of the balance thereof."

At the time that the defendant applied the dividend to the premium, as provided in option B, the usual notice thereof was sent by it to the insured, setting forth the amount of premium due, the amount of the dividend used to reduce the premium, the balance of the premium, and the advice that unless payment of the balance was made within the grace period, the policy would become forfeited.

The plaintiff, relying on the non-forfeiture clause, contends that the defendant should have applied the dividend, $37.38, to the payment of the first quarterly installment, $35.94. Had this been done, the policy would not have lapsed during the lifetime of the deceased, and the plaintiff would now be entitled to payment of the policy.

The defendant argues: (1) That the non-forfeiture clause is inapplicable because the insured had definitely selected the option to pay premiums annually and not quarterly, and that the defendant, therefore, had neither the duty nor the right to use the dividend to pay a quarterly premium; and (2) that the non-forfeiture clause does not refer to any dividend except one embraced within option D of the policy, viz., dividends left with the company to accumulate at interest, subject to the order of the insured.

The questions presented have not been determined either in this State or in Massachusetts where this policy was written. Cases arising in other jurisdictions have been cited by the defendant to the court which hold that an insurance company need not and cannot credit earned dividends to quarterly installments of premium where the insured has selected the option of paying his premiums on an annual basis. (*Weinstein* v. *Mutual Trust Life Insurance Co.*, 116 Conn. 654; 166 Atl. 63; *Price* v. *Northwestern Mutual Life Ins. Co.*, 113 W. Va. 683; 169 S. E. 613; *Gardner* v. *National Life Ins. Co.*, 201 N. C. 716; 161 S. E. 308.)

Examination of the opinions in these cases, however, does not disclose the presence in the policies therein considered of a clause similar to the non-forfeiture clause here present. In its absence, the conclusion seems correct that the company would have no right to violate the express agreement between it and the insured by charging a quarterly premium where an annual one had been duly selected by the insured. The quarterly premium is larger than

one-fourth the amount of the yearly premium. If the insurance company, without the consent of the insured, were to charge the proportionately larger quarterly premium although the insured had specifically chosen the proportionately lower annual payment, and were then to credit the dividend thereto, its action might well be a breach of the written agreement.

The language of the non-forfeiture clause in this policy, however, clearly authorizes the insurance company to use the dividend to pay an installment of premium, even though the insured had selected an annual premium basis for his policy. The clause provides that the dividend accumulations should be used to pay the overdue premium, " *if sufficient for the purpose;* " but expressly states that, if the dividend accumulations are not sufficient for the purpose, they should " *be used to pay the largest installment of premium* " for which they suffice. Not only is there here express authorization to use the dividend accumulations for the largest installment of premium which they will cover, but after such application has been made, the policy is considered to have been changed by such action so as to make the premiums thereafter payable on such installment as was covered by the dividend. Provision is made that " thereafter the premium on this policy shall be payable in like installments unless a request for change in due form shall be made." The intent is clear, therefore, as originally expressed between the parties by the policy itself, that if there are sufficient dividend accumulations payable to cover only a quarterly installment not only should the quarterly installment be paid thereby, but the insured is deemed to have changed his option from an annual payment of premium to a quarterly payment.

The question remains, however, whether or not the dividend in this case was a " dividend accumulation " which should have been applied to the payment of the quarterly premium in accordance with the clause of the policy quoted. The defendant contends that only a dividend selected under option D is applicable to the situation; and that the dividend in this case, which was to be used under option B only in reduction of premium, does not come within the protection of the non-forfeiture clause.

I concur with that contention.

Of the four options which are set forth in the policy, it is obvious that the non-forfeiture clause could not possibly apply to either option A or option C. In option A the dividend must be paid over to the insured in cash; and in option C the dividend is retained by the insurance company and the principal amount payable under the policy is increased. In neither case can the dividend be used to pay any part of the premium.

There remain, therefore, only options B and D. These options are separate and distinct, and the language of the policy with respect to each is clear and unambiguous. As was said by the United States Supreme Court in an analogous situation in the case of *Williams* v. *Union Central Life Ins. Co.* (291 U. S. 170; 78 L. Ed. 443): "There is no ambiguity in the terms of these options. They are clear and definite in the terminology of insurance and each is to be applied with its distinctive significance."

Option B is an annually recurring method of payment. Each year the dividend earned is used to reduce the yearly premium due on the anniversary date of the policy. Option D, however, is specifically designed to permit dividends to accumulate over a period of years and to gather interest each year as they increase in amount. The non-forfeiture clause provides that dividend accumulations are to be used to pay an annual premium, if sufficient for that purpose. It is quite obvious that the dividend of one year could never be sufficient to pay an annual premium. Under option B an annual dividend could never be used to pay an entire annual premium. If applied to option B, the language of the clause would be futile so far as a yearly premium is concerned. The only way that dividends could ever equal an *entire annual premium* would be by accumulations from year to year under option D.

This conclusion is fortified by a consideration of the Massachusetts statute, pursuant to which this form of policy is issued. (Gen. Laws of Mass. [1932] chap. 175, § 140.)

The statute provides for the four options set forth in the policy, and states that if no option is selected, option D should take effect. The material portion of the section is as follows: "Each such dividend shall annually, at the option of the holder of the policy, (a) be payable in cash, or (b) applied in reduction of premiums, or (c) to the purchase of a paid-up addition, or (d) be left with the company to accumulate to the credit of the policy and be payable at the maturity thereof, or be withdrawable in cash on demand by the holder of the policy, or applied as hereinafter set forth; but if no election is made by the holder of the policy prior to any anniversary thereof, the dividend for that anniversary shall be held by the company as provided in option (d); and if any premium on the policy is not paid at the expiration of the days of grace, the company shall keep the policy in force by applying the dividend accumulations to the payment due on the policy if such accumulations are sufficient to make said payment in full, and shall forthwith mail a notice to the holder thereof at his last known address, stating what amount has been so applied, and if a balance of the

dividend accumulations remains to the credit of the policy, the amount thereof, provided that the share of the surplus so apportioned to a term policy shall not be available for the purchase of a paid-up addition, and provided that nothing herein contained shall operate to continue a policy in force beyond the period which any dividend accumulation so applied would carry the policy under its full premium rate, nor beyond the term for which the policy was originally issued, and that the affidavit of any officer, clerk or agent of the company, or of any one authorized to mail such notice, that the notice required by this section has been duly mailed by the company, shall be *prima facie* evidence that such notice was duly given."

It will be noted that after mentioning the various options and providing that option D shall be applicable in the absence of any inconsistent choice, the statute proceeds immediately to discuss dividend accumulations in a way which makes it clear that the language applies only to option D.

During the trial, evidence was introduced of the custom of insurance companies in handling dividend accumulations. Whereas evidence of custom is normally admissible where it is shown that the contracting parties knew of the custom or that the custom is so widespread that the contracting parties must be assumed to have known of it, this rule is not applicable here. A custom of insurance companies, no matter how widespread, would not generally come to the attention of persons seeking insurance. Such persons are normally outside of the insurance business, and would not be chargeable with knowledge of any technical custom among insurance companies. (*Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307.) Consequently, the evidence of the custom will be stricken from the record, with exception to the defendant. This action does not, however, disturb the conclusions above reached.

Judgment is directed for the defendant. Exception to the plaintiff. Thirty days' stay, and sixty days to make a case.