**ROSE AND LUCY, INC.**

v.

**RESOLUTE INSURANCE COMPANY**
**and Lloyds Underwriters and/or In-**
**stitute of London Companies.**

No. 64–39.

United States District Court
D. Massachusetts.

June 22, 1965.

Robert J. Hallisey, Hiller B. Zobel, Bingham, Dana & Gould, Boston, Mass., for plaintiff.

James A. Whipple, Herbert C. Splane, Kneeland & Splane, Boston, Mass., for defendants.

FRANCIS J. W. FORD, District Judge.

This is an action to recover on a policy of marine hull insurance issued by respondents to the libelant; effective from June 3, 1963 to June 3, 1964, covering the vessel ROSE AND LUCY at an agreed value of $30,000 against, among other risks, perils of the sea, including sinking by collision. On or about January 4, 1964 the ROSE AND LUCY was lost at sea as a result of sinking after a collision with the fishing vessel SAINT ANNA MARIA. The sole issue is that raised by respondent's defense that the policy is void for fraud because libelant in applying for insurance on the vessel misrepresented its value.

Application for the insurance policy was made by one Parisi, a stockholder of libelant corporation and its clerk, through his insurance broker, Marshall. He asked for insurance coverage of $30,000 on the vessel, the amount which he had had with other insurers in prior years, and which he testified was the amount of insurance he thought libelant could afford to pay for. Parisi testified that the vessel was worth $50,000 to $60,000 to him, but it was clear that he had no firm opinion as to what its fair market value was. At no time did he expressly state, when applying for the insurance, what the value of the vessel was, and he was never asked what it was. In another action pending in this court arising out of the collision in which the ROSE AND LUCY was lost, it is alleged that the value of the ROSE AND LUCY was $60,000.

■ Respondents' position is that under a practice and custom in the trade, an application for insurance on a vessel in the amount of $30,000, without any express statement as to the value of the vessel, is understood as a representation that the vessel's fair market value is approximately $30,000. The evidence for the existence of such a custom was the testimony of Marshall and of Enos, who issued the policy on behalf of respondent, that there was such a custom or practice. Enos, however, was vague about how, when or where he first learned of such a practice. While he testified that he had an extensive library of publications dealing with marine insurance, he cited no reference in that literature to such a custom. There was no evidence from any independent witness as to the existence of such a custom. On the evidence presented the court cannot find that the alleged custom or practice ever did exist.

■ Even if there had been such a custom or practice it would not bind libelant. No one ever told Parisi that such a custom existed and he had no actual knowledge that it did. There was no evidence that such a custom, if it did exist, was so widespread and notorious that there can be any presumption that persons outside the insurance business were aware of it. Howard v. Great Western Insurance Company, 109 Mass. 384, 389. Where a custom or practice of the insurance business is not known to the purchaser of insurance and not shown to be commonly known outside the insurance business itself, this court cannot hold that the custom is effective to convert an innocent statement as to the amount of insurance desired into an unintended representation as to value which, if it turns out to be incorrect, voids the policy and deprives the purchaser of the insurance protection he had every reason to believe he was purchasing. Rickerson v. Hartford Fire Insurance Co., 149 N.Y. 307, 43 N.E. 856; Pearson v. Mass. Mutual Life Insurance Co., Inc., 151 Misc. 584, 272 N.Y.S. 117; Hartford P. I. Co. v. Harmer, 2 Ohio St. 452; Red Wing Mills v. Mercantile Mut. Ins. Co., D.C., 19 F. 115, 116.

■ Moreover, a policy cannot be voided for misrepresentation where the alleged misrepresentation was not relied upon and did not in any way mislead the insurer. Enos had the vessel surveyed by one Kershaw, whose opinion was that the value of the vessel was $40,000. Enos, on the basis of this survey, his own wide knowledge of the marine industry in New England, and the results of his inquiries of others familiar with fishing vessels, arrived at his own independent conclusion that the vessel was worth between $30,000 and $40,000. On the basis of that conclusion he decided to issue the insurance and fixed the rate to be charged.[1] It was his testimony that nothing more that anyone could have told him would have caused him to change his opinion. Clearly he cannot be found to have relied in any way on any representation as to value he may have thought was implied in libelant's application.

Judgment will be entered for libelant in the amount of $30,000 with interest from January 4, 1964.

1. There was evidence that the rate charged for insurance might be partly dependent on the value of the vessel. Thus in the case of a policy like that in suit covering not only total loss of the vessel, but also partial losses, $30,000 insurance coverage on a vessel worth $60,000 might cost more than the same amount of coverage on a vessel worth $30,000 because of the possibility of higher partial loss payments on the $60,000 vessel. Libelant, however, had no knowledge that this factor affected the amount of the premium it had to pay.