MILLS and others *v.* HALLOCK and another.

---

Goods were sold at auction on the ninth and twenty-second days of June, on " approved promissory notes;" and delivered to the purchaser, who (although in good credit at the time) did, on the seventeenth day of July following, make an assignment for the benefit of creditors. The approved notes had not been given and were not applied for until after the assignment. The court decided that, even if there were a custom or usage as to sales for approved paper, the delay of the complainants here was against their recovering possession of the goods and that the delivery was complete.

A custom must be proved by evidence of facts; by means of witnesses who have had frequent and actual experience of it.

---

*Feb.* 18*th,*
1836.

*Auction sale.*
*Custom.*
*Delivery.*

The bill, which was filed on the twentieth day of July, one thousand eight hundred and thirty-two, originally went against William Pike and Joshua C. Skidmore. It had been dismissed, as to Pike, by consent; and Pike died two days after the same was filed.

The pleading showed that the complainants, Sylvester H. Mills, Levi A. Mills and Thomas M. Hooker, as auctioneers in the city of New York, and about the ninth and twenty-second days of June, one thousand eight hundred and thirty-two, sold to the said William Pike certain goods, specified in a schedule, to the amount of five hundred and twenty-one dollars and sixty-three cents for an approved promissory note to be given at the delivery of the goods. That, by the usage of trade, where goods are delivered when called for, the property in them remains with the seller until

the notes are given. That the complainants delivered the goods to Pike immediately, but that he had, when afterwards requested, declined giving his note for them; and, shortly after the sale, failed and assigned to the defendants and Joshua C. Skidmore his property, including a great part of the goods for some alleged precedent debts. That the complainants had applied to the assignees to re-deliver or pay for the goods, both of which they had refused to do.

The defendants, Charles Hallock and John Jagger, (assignees of Pike,) in their answer, admitted the purchase by Pike; but declared their ignorance of the terms of sale and value of the goods. They denied the usages of trade as averred in the bill; and submitted to the court that where goods were sold as these were, they became the property of the purchaser and that, in the absence of any special agreement, the seller has no control over them. They averred that Pike was in good circumstances at the time of the purchase; and that more than a month afterwards he failed and, on the seventeenth day of July, one thousand eight hundred and thirty-two, assigned to them certain property—a copy whereof was annexed to their answer. That after they had undertaken to execute the objects of the assignment, the complainants applied to them in relation to the goods and that this was the first they knew of the sale or circumstances and they knew nothing more except from the bill. That they told the complainants they did not consider themselves bound to redeliver the goods. That Pike died insolvent on the twenty-second day of July one thousand eight hundred and thirty-two—never having informed then what became of the goods or their avails and they knew nothing of them, except that, upon an examination of Pike's goods, after copies of the bill were served on them, they found one parcel, worth about fifteen dollars, now in their possession and they believed the rest were sold before Pike's failure and the avails applied to his own use. That the goods assigned would not pay Pike's creditors; and they denied the complainants' right to the goods.

Proofs were entered into; but it is believed that, for the purposes of this report, they will be found sufficiency referred to in the opinion of the court.

Mr. *Sedgwick*, for the complainants.

Mr. *Staples*, for the defendants.

*Nov. 14th.*    THE VICE-CHANCELLOR :—In the case of *Haggerty* v. *Palmer*, 6 J. C. R. 437, it was assumed that the delivery of the goods was conditional, from the usage of trade which was said to exist in relation to auction sales in the city of New York where goods were sold for approved endorsed notes and the notes were not given ; and it was held that the auctioneer could reclaim the goods or their proceeds in the hands of a voluntary assignee ; and in *Keeler* v. *Field*, 1 Paige's C. R. 312, the delivery was considered to be conditional by the terms of the contract itself until endorsed notes were given and not from any particular usage of trade—the sale there not being one at auction.    The circumstances of the last case furnished also a ground of fraud upon which the court could very properly interfere and restore possession of the goods.    But, in the present case, there is no ground for imputing fraud to the purchaser or any undue means in obtaining a delivery to him.    Nor is there any thing in the terms of sale from which it can be inferred that the auctioneers, the complainants, did not intend to part with the possession and all right to and control over the goods, when they permitted the purchaser, Pike, to take them to his own store.    He was to give an approved note or notes—not necessarily an endorsed note.    They might have been satisfied with his own personal responsibility.—He was in good standing and credit at the time. They did not stipulate absolutely for the security of a third person, an endorser.    There is, therefore, less reason in such a case for supposing they did not intend a conditional delivery than in the case of a sale for approved endorsed notes.

Besides, the delay on the part of the complainants in calling for the notes and their not seeking to obtain a return of the property until after they had heard of the purchaser's failure and of his having made an assignment, affords sufficient evidence of their having waived the condition, if any

such were attached to the delivery. One parcel of the goods was sold on the ninth of June and another on the twenty-second of the same month; and it was not until about the middle of July that Pike, the purchaser, failed and made an assignment for the benefit of his creditors—say on the seventeenth of July. He had all this time to make sales of the goods. The complainants knew he bought them to sell again. Did they then expect he would keep them on hand and that they could reclaim them or resume the possession at any length of time when they might choose to call and not receive such note or notes according to contract? In *Furniss* v. *Hone*, 8 Wend. R. 247, it was intimated that a delay of seven days in sending for the notes would be considered a waiver of the condition.

Even placing the present case on the footing of custom or usage, the delay here has been greater than is generally allowed. One of the witnesses for the complainant, Mr. Austin, says the notes are called for in most cases within ten days. Mr. Hone, another witness, states it to be within a fortnight, while Mr. Cruger, their clerk, from six to eight days. And there is no legal evidence before me that the notes were called for before they heard of the assignment. If they did call for them sooner, certain it is they took no steps to get back the goods; and I think this sufficiently shows it was not a conditional delivery or that the condition was waived.

But as to the point of conditional delivery. This is put upon the footing of a custom or usage of auction sales. The existence of such a custom is denied by the answer. It is a matter of fact put in issue; and proofs have been taken. In the case of *Furniss* v. *Hone* and the cases there referred to, such usage was either expressly admitted or assumed to exist, because it was not denied. The witnesses before named speak of it as a matter understood that when sales are made at auction for approved promissory notes and the goods are delivered, such delivery is conditional only and not perfect until delivery of the notes and, if the notes are not given, the property of the goods remains in the seller. Whether it is so understood by both parties or only by the seller is not stated. Other witnesses, however,

who have been in the habit of buying goods at auction say they have never heard of such a custom or usage in the trade nor so understood it. The difficulty about the testimony, on the part of the complainants, is that it amounts to no more than the mere opinion or private understanding of auctioneers.

A custom must be proved by evidence of facts (and not by mere speculative opinions;) by means of witnesses who have had frequent and actual experience of the custom. The testimony of those who speak from report only and not from particular instances within their own knowledge, if receivable at all, is of no weight: 4 Starkie, 452. The witnesses here do not speak of particular instances within their own knowledge, where the right to reclaim goods has been asserted on the ground of such conditional delivery and been acquiesced in by purchasers. There is no evidence of facts. No evidence that the purchasers have had frequent and actual experience of the custom; and without this, I cannot say the custom exists.

Upon these several grounds, I consider the complainants fail in their case. It appears, moreover, from the testimony that very few of the goods sold by the complainants remained in specie and came to the hands of the assignees under the assignment, probably not enough to confer jurisdiction. I do not see how I can act otherwise than dismiss the bill with costs.