### McMICHAEL v. FEDERAL PRINTING CO.

(Supreme Court, Appellate Division, Second Department. June 24, 1910.)

1. MASTER AND SERVANT (§ 270*)—INJURIES TO SERVANT—NEGLIGENCE—DEFECTIVE MACHINERY—EVIDENCE.

Where, in an action for injuries to a servant by the alleged involuntary operation of a power paper cutter, alleged to be due to the use of improper bearings, there was no offer to prove the use of such bearings in shops and factories generally, evidence of their use in specific shops or factories was properly excluded.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 270.*]

2. MASTER AND SERVANT (§ 108*)—INJURIES TO SERVANT—DEFECTIVE MACHINERY—NEGLIGENCE.

Where, after a machine by which plaintiff was injured had been installed, it had been changed in some of its parts, the master was not relieved from actionable negligence on the theory that the machine as installed was of standard and improved make.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 108.*]

3. MASTER AND SERVANT (§ 235*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff employé was injured by the involuntary operation of a machine due to the heating of the iron pulley because of insufficient lubrication. *Held* not negligent in not providing more oil, he not being required to accurately understand the law of friction, and to determine the exact amount of lubrication required; his duty being performed when he oiled the machinery in harmony with the usual custom.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 235.*]

Jenks and Thomas, JJ., dissenting.

Appeal from Trial Term, Kings County.

Action by Charles McMichael against the Federal Printing Company. From a judgment for plaintiff and from an order denying defendant's motion for a new trial, it appeals. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, JENKS, and THOMAS, JJ.

Frederic P. Warfield (Charles H. Duell and Royal W. France, on the brief), for appellant.

I. M. Kapper, for respondent.

WOODWARD, J.   I find no objection to the statement of the facts in the opinion of Mr. Justice JENKS, in so far as they relate to the construction of the machine, but I do not think it was error for the court to exclude evidence of the use of cast iron bearings in specific shops or factories.   It is probably true that if the defendant had offered to prove by witnesses that a given appliance was in common use, and had undertaken to prove this by showing that a majority of shops and factories were using it, it would be competent to show individual instances of its use in all cases where this might be done. The difficulty here is that no such offer was made.   There was no suggestion that the defendant intended to prove common use by showing a large number of individual cases.   There was merely an offer to show conditions in two places, neither of which appear to have had the same construction as that involved in the case at bar.   The question was not whether iron or bronze bearings were in general use, but whether there was such a general use of iron bearings under the circumstances and conditions in use in the defendant's printing office as to justify their use by the defendant.   No one questioned that iron bearings might be safe and proper under some conditions.   It seemed to be admitted that they might properly be used on a loose pulley, where there was no driving power, but the question before the jury was whether the changed construction, that of bolting together an iron-bearing pulley and a bronze-bearing pulley, and then applying the power to the iron-bearing pulley, was safe and proper, and this issue was not met by showing that some particular factory had thrown out bronze-bearing pulleys and substituted iron-bearing pulleys.   Neither would it have been met by showing that the common practice was to throw out bronze-bearing pulleys.   There was some evidence in the case that the cutting machine, which worked the injury, was of standard and approved make as originally installed, but that it had been changed by a bolting together of a loose iron-bearing pulley and a bronze-bearing pulley, and that the application of power to the iron-bearing pulley at the end of the shaft had a tendency to bring the shaft out of alignment and to increase the friction, and that the friction thus produced caused the shaft to heat and to finally cause the pulley to become attached firmly to the shaft in such a manner as to operate the cutting machine without the intervention of the operator, and that it was this construction, with this attendant result, which operated to start the cutting machine while the plaintiff was placing the paper under the knife.   Obviously it was not the same construction which was in general use, or the construction which was originally intended for the machine.   This being true, what was done in one or many other places using this kind of a machine, or other machines of a similar character, had nothing to do with the case, and the ruling

of the learned court at Trial Term was entirely correct. It might be, if some one else had operated a machine of this same kind, with this same modified construction, for a period of years without having discovered any defect in the plan, the evidence might be competent as tending to show that there was no reason for anticipating an accident of the kind which actually happened, but the testimony was not offered for this purpose, no foundation having been laid therefor, and the only purpose which its admission might have served would have been the confusion of the issue.

I am equally convinced that the reasoning of Mr. Justice THOMAS, while most persuasive, goes only to the weight of the evidence on contributory negligence, and that, the jury having passed upon this question, it is not for this court to overturn the verdict simply because we think we might, sitting as jurors, have reached a different conclusion. The theory of Mr. Justice THOMAS seems to be that, it being the duty of the plaintiff to oil and clean his own machine, he must have neglected to perform this duty, as, on previous occasions, when the pulley had clutched the shaft and operated the machine, it had been found that the application of oil corrected the difficulty. But the plaintiff testified that he cleaned the machine in the morning of the day of the accident, and that he oiled the same at or about the hour of 6 in the evening, only about two hours before the accident happened, and the testimony showed that lubrication was required only about twice in each day. There was some evidence, therefore, of care on the part of the plaintiff in respect to the very condition which is conceded to have been the proximate cause of the injury— the friction of the pulley upon the shaft, causing a clogging, and resulting in the fastening of the pulley to the shaft in such a manner that it caused the machine to start at a time when it was not intended that it should start. The suggestion that, if it was not negligent to use an iron pulley alone, it could not be negligent to use it in connection with a bronze pulley, such bronze pulley being assumed to be proper if used alone, does not seem to me to be conclusive. There was evidence that the oil cup provided on the bronze pulley was much larger than that on an iron pulley, and, while Mr. Justice THOMAS points out that the bronze pulley also afforded the oiling cup for the flywheel, this does not fully meet the situation. The oil cup provided on the iron pulley was the oil cup originally designed to supply the lubrication for a loose pulley, on which there was but comparatively small friction, and where there was no danger to the operator of the machine, even though it should become heated. This oil cup, entirely adequate for the loose pulley, we may assume may have been entirely inadequate for a pulley subjected to the strain of driving a 60-inch knife blade through heavy stacks of paper, and it was not the duty of an ordinary machine operative to know of this defect in the machine as it was afforded him for operation. It should be remembered that the driving power was taken from the pulley which was supplied with the large oil cup, and transferred to the pulley with the small oil cup, and the plaintiff may be absolutely truthful in saying that he oiled the bearing at 6 o'clock in the evening, and yet the lubrication may have been in-

sufficient, owing to a defect in the construction of the machine as modified, by reason of the iron pulley being put to a task for which it was not designed and which made the smaller oil cup inadequate. It is not the province of an ordinary machine operative to understand accurately the law of friction, and to determine with accuracy the exact amount of lubrication required. He has performed his duty when he has oiled the machinery in harmony with the usual custom in reference to such machinery, in accord with the rules suggested by the manufacturers, and it appears in this case that twice each day was the rule for this machine as it was originally designed, with the iron-bearing pulley used only as an "idler" when the machine was not performing its work. The plaintiff testifies that he oiled this bearing, that he filled the oil cup to overflowing, to be sure that it was properly done, and, if this is true, and the accident resulted because the master had permitted the change in construction by which the loose pulley with small friction and a small oil cup was made to take the strain of the actual working of the machine, thus increasing the friction without any corresponding increase of the lubricating contrivance, then there was neglect of the duty which the master owed to the servant, and the verdict of the jury ought not to be disturbed. I am of the opinion that the evidence justified the jury in finding that this was exactly what occurred, that the plaintiff did clean the machine in the morning of the accident, and that he oiled it within two hours of the time of the accident, thus complying fully with the requirements of the machine in its original condition that it should be oiled twice each day; that the pulley originally designed merely to carry the belt when the machine was not in operation, and requiring but a small amount of lubrication, being put to the task of driving the machine in heavy work (for this was an extra large cutting machine), the provision for lubrication was inadequate, and the resulting friction produced the condition which produced the accident.

If I am right in this, it follows that the learned court below did not err, as suggested by Mr. Justice JENKS, in excluding the testimony in reference to the use of iron and bronze pulleys in specific cases, for that was not the issue. The question was whether the machine as reconstructed was a safe and proper machine. An iron pulley designed to be the driving pulley, and properly equipped for that purpose with an adequate oil cup, might be perfectly proper, while an iron pulley, intended only to carry a belt, without strain, and equipped with an oil cup entirely proper for that purpose, might be extremely dangerous if used as a driving pulley, as was done in this case, and so the question of the use of iron or bronze pulleys, however general, could not justify the defendant in making use of a mere belt-carrying pulley, at least without warning the plaintiff of the fact that the machine as thus changed would require oiling at much shorter intervals at this pulley bearing.

The judgment and order appealed from should be affirmed.

HIRSCHBERG, P. J., and RICH, J., concur.

JENKS, J. I dissent. The action is for negligence by servant against master, who appeals from a judgment upon the verdict at

Trial Term. The servant worked at one of the paper-cutting machines in the defendant's shop. His duty was to cut paper by a horizontal knife suspended above a table whereon the paper was laid. The machine as furnished by the manufacturer, and as originally used by the defendant, was worked by steam. Normally the knife was brought down to cut by two movements of a hand lever worked by the servant, and, when the lever was released, the knife rose to its original place. The version of the servant, an old and experienced workman, is that, when he was arranging paper, the knife without action on his part came down, and severed his hands. The charge against the master is that this fall of the knife was due to faults in the machine caused by changes made therein by the master subsequent to its purchase and some time after its original use. The master employed an electrical machinist to substitute electricity for steam. When steam power was used, there was a system of loose and tight pulleys, so that the power might be cut off from an individual machine. But the change involved a substitution of an individual motor, and, inasmuch as such electrical power could be turned on or cut off at will without affecting any other machine, the loose pulley was dispensed with. And the former tight and loose pulleys were joined so that both became as one driver, which was practically a loose pulley or a tight pulley as it was disengaged or engaged from the clutch. The plaintiff contends that such construction and use of the former loose pulley was one of the principal faults in the machine that caused the accident, because the original tight pulley had bearings of phosphor bronze, while those of the original loose pulley were of cast iron. He brought testimony that the friction of cast iron and steel (the material of the shaft) was greater than that of bronze and steel, and that, when a driving pulley with bronze bearings would run smoothly and coolly, such pulley with cast iron bearings would heat and burn, and eventually would become fast to the shaft or "frozen" to it. The theory of the plaintiff was that such condition finally developed in this machine, and that thereupon the knife "repeated" or was "seized" so that it fell and rose without warning, and, of course, without action by the workman upon the hand lever, until the power itself was shut off. The plaintiff laid great stress upon this defect, and his contention was that the master was negligent in furnishing this machine wherein the danger was greatly increased by such use of cast iron bushings or bearings. The defendant asserted that such use was not negligence, and a considerable part of the record consists of this controversy.

The master was required only to furnish such a machine as was reasonably proper and safe, and he was absolved if in this respect he exercised such care as would be exercised by a man of ordinary prudence with an eye to his own safety in seeking such a machine for his personal use, for, as Earl, J., in the case first hereinafter cited, says: "It is culpable negligence which makes the master liable, not a mere error of judgment." Harley v. Buffalo Car Manufacturing Co., 142 N. Y. 31, 36 N. E. 813; Marsh v. Chickering, 101 N. Y. 396, 5 N. E. 56; Burns v. Old Sterling I. & M. Co., 188 N. Y. 175, 80 N. E. 927. Labatt on Master and Servant (section 43) writes:

"It may be laid down as an undisputed proposition that, where the injury complained of was caused by an instrumentality or method which at the time of the accident was in its normal condition, evidence going to show that such an instrumentality was or was not commonly used under similar circumstances by persons in the same line of business as the defendant is always competent for the purpose of proving that he was or was not in the exercise of due care in adopting or retaining that instrumentality as a part of his plant. Nor is it disputed that, if the evidence is conflicting as to whether such machinery is in common and ordinary use, the question of negligence in using the machinery is not one of law, but of fact for the jury."

See, too, Thompson's Comm. on Neg. § 3993.

Although the master originally had bought and set up a machine of standard make, yet, as he had caused a third person not the manufacturer to make changes therein without the approval of the latter, the feature of a standard machine purchased from the manufacturer does not appear in this case.

This statement of the master's general obligation makes it clear that the master on the question of his care was entitled to show usage of cast iron bearings for a like purpose. The master sought to prove that in certain workshops where there was a large number of similar machines bronze bearings had been replaced by cast iron bearings, but was prevented by the sustaining of a general objection to which exception was taken. And thereafter the master inquired of a witness whether a certain manufacturer, said to be the largest in the country, had used any bronze bushings within the last 10 or 15 years, or whether it had within that period used any bronze or soft metal bushings in its power presses for the pulleys. The objection of incompetency was sustained under exception. The learned counsel for the plaintiff writes in his points relative to these rulings:

"Assuming for the purpose of the argument that it might have been proper to show the general custom in this respect, it is well settled that that cannot be done by the proof of one particular instance as was attempted in this case. It does not appear that the witnesses had any knowledge of the general usage or if they did no attempt was made to prove the result thereof. Testimony to specific instances does not establish usage. Abbott's Trial Brief on Facts (2d Ed.) 598, and cases there cited."

Testimony of specific instances merely may not establish usage. But, on the other hand, to quote the language of Vann, J., in Rickerson v. Hartford Fire Ins. Co., 149 N. Y. 316, 43 N. E. 859:

"Usage is a matter of fact, not of opinion, and must be shown by those who have observed the method of transacting the particular kind of business as conducted by themselves and others. Mills v. Hallock, 2 Edw. Ch. 652; Haskins v. Warren, 115 Mass. 514, 535; Chesapeake Bank v. Swain, 29 Md. 483, 498; Garey v. Meagher, 33 Ala. 630; 2 Rice on Ev. § 349."

In Mills v. Hallock, 2 Edw. Ch. 652, the Vice Chancellor said:

"A custom must be proved by evidence of facts (and not by mere speculative opinions) by means of witnesses who have had frequent and actual experience of the custom. The testimony of those who speak from report only, and not from particular instances within their own knowledge, if receivable at all, is of no weight. 4 Starkie, 452."

Prof. Wigmore, in his Evidence, says (section 379):

[a] "Of course individual instances, offered one at a time, are receivable. The practical question is commonly whether enough have been offered to suffice to go to the jury."

Of course, specific instances must be proved seriatim. After the master was thus checked by the court, he was not required to offer in evidence all of the instances which he could have shown. The defendant was halted in his course of producing testimony of specific instances which might be sufficient ultimately to establish evidence of usage. If the defendant had not been checked, non constat that the court could and would have determined that there was such evidence in the case, for there would have been this initial question for the court. If so, then, upon the record in this case, it would have been proper for the court to submit that evidence to the jury as bearing on the question of the master's due care in using such bearings of cast iron. I hesitate to suggest the quantity of proof of specific instances that would suffice to constitute evidence of usage. There can be no hard and fast rule. Labatt on Master and Servant (section 53) suggests that the number of instances should be relatively large as compared to the whole number, and I think that it may be said that the testimony of specific instances, in order to constitute evidence of usage, should indicate in this case that the employment of cast iron bearings subject to like strain was usual and ordinary in machines furnished by masters of ordinary prudence and care for like work. Although the case as presented was rightly submitted to the jury, I think that the error in the exclusion of this testimony requires a reversal of the judgment and the granting of a new trial.

The prevailing opinion thus puts aside my objection to an affirmance of the judgment. Mr. Justice WOODWARD, for the majority of the court, writes:

"It is probably true that if the defendant had offered to prove by witnesses that a given appliance was in common use, and had undertaken to prove this by showing that a majority of shops and factories were using it, it would be competent to show individual instances of its use in all cases where this might be done. The difficulty here is that no such offer was made. There was no suggestion that the defendant intended to prove common use by showing a large number of individual cases. There was merely an offer to show conditions in two places, neither of which appear to have had the same construction as that involved in the case at bar."

It would seem that the learned judge disregards entirely the statement of the defendant at the time it was checked by objection. The record is as follows: The counsel for the defendant on the redirect examination of his witness asked:

"Q. Has the Miehle Company for the past 10 or 15 years used any bronze or soft metal bushings in their power presses for their pulleys? (Objected to as incompetent. Objection sustained. Exception.)

"Mr. Bouvier: Upon the question of liability, is it not proper to show the exercise of reasonable care, to show that the defendant carried out or complied with a system obtaining in some of the large and important mechanical companies in this country, on the question of reasonable care?

"The Court: The question here is whether this defendant in this instance and in the use in question exercised reasonable prudence and care.

"Mr. Bouvier: In the use of a cast iron bearing?

"The Court: Take the machine and its necessary apparatus, shafting, pulleys, flywheel, and motive power. Hence I adhere to my ruling. (Exception.)"

It seems to me that this was a definite statement of the object of the testimony which had just been excluded, namely, not to show

merely the isolated practice of the Miehle Company, but to show the practice in some of the large and important mechanical companies in the country, of which that company was one. This was an avowed purpose to show usage, and, if evidence thereof may be established by individual instances, the defendant plainly declared that such was its intended course. It is true that the learned counsel did not declare his purpose to show, to quote the language of Mr. Justice WOODWARD, supra, that "a majority of shops and factories were using it," but I am not at all clear that he was bound to go so far, in view of the fact that no precedents for this proposition as to "a majority" are cited by the learned judge. In fine, the counsel declared the purpose of the testimony, and the court excluded it upon the proposition itself, and not upon any defect in the specific question. And it is hardly correct to say that there was merely an offer to show conditions in two places as if the purpose of the defendant would have been accomplished if it had been permitted to go thus far; for it appears that it theretofore had shown usage in the Standard Company, had attempted to show it in the Schlagel Company, and was attempting to prove it in the Miehle Company, when checked by the objection. I think that after the court had been informed of the object of the question, and had ruled against the defendant on the principle, that in order to preserve the right of review the defendant was not bound to call all the witnesses to specific instances of usage in order to obtain repeated rulings of the court. I am at a loss to find the warrant for the statement that "neither appear to have had the same construction as that involved in the case at bar." The writer cannot mean that it appears that they had a different construction, for there is no evidence to warrant this statement. If he mean that it does not appear that they had the same construction, all that is to be said is that, as far as the evidence goes, it shows that part of the construction under consideration was practically similar; indeed, no point as to difference was made by the learned counsel for the respondent at the trial or upon the appeal.

For these reasons, I think that a new trial should be granted.

THOMAS, J. The machinery involved in the accident is described clearly by JENKS, J. The only ground of negligence upon any pretense imputable to the defendant was a union of a pulley with cast iron bearing to one with a bronze bearing. The criticism by plaintiff of this device is that the cast iron pulley makes the greater friction, as it revolves on the shaft, and the lubricating oil "burns and cakes and forms with the particles that are ground off of the cast iron bearing a cake, and, together with the heat which expands the metal, the bearing of the pulley becomes fast or frozen to the shaft." See evidence of Southard, pp. 131–210. The two pulleys were lashed together and revolved as one pulley, and the alleged danger arose from inequality of friction, so that the cast iron pulley consumed its oil faster than the bronze pulley, and the attritions from the bearing hardening in elements of burned oil tended to make it freeze or attach itself to the shaft, which caused the knife to fall and rise. Of course, if both pulleys be of iron or there be a single iron pulley, the wear is the same,

the consumption of oil and caking is the same, save as I shall later notice a claim of plaintiff. Hence the accusation in one of its aspects fairly is that it was negligent to use a cast iron bearing. Now, the record teems with evidence that cast iron pulleys are in common and approved use, and it cannot be that the defendant should be held liable for using one. And yet the plaintiff aimed his evidence in a considerable degree against an iron pulley as such. I think his evidence as to the relative effect of use upon an iron and bronze pulley was admissible and probably necessary in order to show, as he contends, that one consumes more oil and cakes more and is more liable to freeze than the other. But what of it? This simply means that the iron pulley requires more oil and more cleaning than the bronze pulley. If it would be prudent to use one iron pulley or two iron pulleys combined, it would be prudent to use an iron and bronze pulley, although there would be inequality of necessary oiling and cleaning. And yet that is the only question: Was the combination a negligent one? Either was prudent—were both negligent? The plaintiff points to the fact that the oiling hole of the iron pulley held a thimbleful, while the receptacle for the bronze pulley held six or seven times more. But we should not be misled. The receptacle for the bronze pulley conveyed the oil also to the flywheel to which the bronze pulley was attached. Now, it was the duty of the operator, the plaintiff, to clean and to oil the iron pulley as if it were the only pulley. There was no justification for adjusting the care of his iron pulley to his care of the bronze pulley, nor should he have allowed the one duty to influence the other. The evidence shows that the pulleys worked safely when properly cared for. At times the knife repeated, and in every instance after cleaning and oiling, the trouble was removed. Unless we are prepared to hold that the jury was justified in holding that it was negligent to use an iron pulley alone, I do not see how the verdict can be sustained, and such a holding would dispute the practical wisdom of those who use such appliances. But the plaintiff urges that the combination is also negligent because the alignment of the two pulleys would not be correct. Southard says that the alignment would not be "commercially perfect," but I do not understand that the commercially imperfect alignment was the proximate cause of the accident. The court did not submit specifically to the jury the question whether the combination was negligent, but rather, "Was there a defect in the machine, or in the shaft or pulley attachments, or in the manner of the belt action on the pulleys or either of them?" This submission of the question of negligence as to the whole machine and its several named parts was plain error, but there is no exception. I mention it as it shows that the jury was allowed to base the verdict on all and everything, which included the question whether the mere use of an iron pulley was negligent. But the charge becomes material in view of the rule of evidence discussed by Mr. Justice JENKS. The evidence excluded was intended to show that an important concern had substituted iron for bronze bearing pulleys, and that another concern had not used bronze in pulleys. The inquiry whether iron pulleys could be prudently used was relevant to the question the plaintiff brought.

into the case, and one of the questions that the court by the language above quoted left to the jury. But whether the questions excluded were admissible in that regard need not be determined, inasmuch as in my judgment there was no question for the jury. Therefore I advise reversal.