Jennie Alterman, Respondent, *v*. The Home Insurance Company, Appellant.

(Supreme Court, Appellate Term, First Department, April Term—Filed June, 1920.)

Insurance (fire) — contracts — interpretation of — parties.

> An insurance contract is not unlike any other contract, and is to be interpreted so as to give effect to the intention of the parties and to every material word used within its bounds.
>
> A fire policy covering a brick building and extension thereto held to include building on the back of the lot not actually attached to the front building.

Appeal by defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, fifth district, in favor of the plaintiff upon an agreed statement of facts.

Robert A. Fosdick, for appellant.

Jacob I. Berman, for respondent.

Wagner, J. To recover for a conceded loss sustained by fire, the plaintiff sued under two insurance policies issued by the defendant company and covering " the brick building and extension thereto occupied as store and dwelling, situate No. 529 East 11th Street, Borough of Manhattan, city of New York, including also all fixtures; also stoops, sidewalks, mason and iron work in front, fences and yard fixtures in rear thereof."

There were two brick buildings on the lot, one four stories in height located on the front, and the other two stories in height located on the rear of the premises, the latter distant from the former about twenty-

five feet, and physically separate and detached therefrom. The front building was occupied as a store and dwelling and was known by the street number 529. The back building was not used as a store and dwelling. Indeed, to what use it was put does not appear in the agreed statement of facts. The fire occurred only in the rear building, and defendant disclaimed liability upon the ground that damage to the rear building was not covered by the above description in the policies. Prior to the time of the issuance of the policies, the defendant admittedly had an atlas or map of buildings in the city of New York, from which it appeared that there was a building on the front and another on the rear of the premises, and the defendant admitted that it knew of the existence of both buildings. Further, it based its premium upon the rate fixed by the board of fire underwriters, and conceded that no extra rate of premium for insurance would have been charged had the policies specifically described the front and rear buildings, in which case defendant would simply have apportioned the amounts to each building.

No inspection or independent examination of the premises was made by defendant at the time the policies were issued. The same buildings had stood upon the present lot — the usual city lot, 25 feet in width by 100 feet in depth — for a period of more than thirty years. The only means of effecting entrance to the rear structure was by means of the front building.

The case presents an interesting question of construction, namely, did the policies include the rear building where the fire occurred? Or, did they only appertain to a portion of the premises, viz., the front building?

An insurance contract is not unlike any other, and is to be interpreted so as to give effect to the intention

of the parties, ascertained from the language used in the instrument as a whole, and aided by the examination of other surrounding facts and circumstances which may have a legitimate bearing on or tendency to disclose such intention. Furthermore, it should be construed in a manner which will give effect to every material word used within its bounds, if such a construction is not patently inconsistent with other parts of the contract or incompatible with the attendant circumstances or the subject matter. Great stress is placed by defendant upon the literal meaning of the word " extension." It is contended that the rear building is necessarily excluded from the purview of the policies by the etymological derivation of the word supported by authoritative definitions thereof. We are not strongly impressed with the argument, but are rather of the  opinion that the technical definition of the word as given in the authorities is of little, if any, value, and affords but small assistance in determining its application to a particular structure such as appears in this controversy. Its meaning may be either widened or limited by reference to the other words of description, and must be subordinated to the purposes contemplated by the parties to the contract.

Nor do we see an insuperable objection to the plaintiff's contention in any alleged necessity of physical connection between the two structures. It is true that in the great majority of cases where the question has been presented, there has been some physical connection between the principal building and the structure sought to be brought within the terms of the policy. But in cases where the question has been discussed with reference to the similar expression " additions," the conclusion has been reached that it is not absolutely necessary that the structures be physically connected.

In *Phenic Insurance Co.* v. *Martin,* 16 So. Rep. 417, it was held that a policy on a two-story brick building and additions thereto included an entirely separate and distinct building within the curtilage. To the same effect is *Tate* v. *Jasper Co. Farmers Mutual Insurance Co.,* 133 Mo. App. 584, which held that a detached building is an addition within the description of a policy purporting to cover a dwelling and additions. See, also, *Robinson* v. *Pennsylvania Insurance Co.,* 87 Maine 399; *Pettit* v. *State Insurance Co.,* 41 Minn. 299.

In *Rickerson* v. *Hartford Fire Ins. Co.,* 149 N. Y. 307, the circumstances while not exactly similar to the case at bar closely approached it. There the court construed the phrase "brick building and additions." In the front of the premises involved was a brick building, the main part of which was three stories high; in the rear, a five story brick building. Between these two buildings was a stable one story high, the front wall of which was the rear wall of the front building, and the rear wall of which was the front wall of the rear building. The buildings thus formed a continuous structure, extending from the street to the rear line of the lot, and while there was no door between the stable and either building to the front or rear thereof, there was a window communicating with each. The stable and the rear part of the front building were not as wide as the lot, and this left an open space on the east side known as "the yard." The evidence showed further that there was an arched passage or alley-way under the east side of the front building on the ground floor, extending from the street to the yard with a door opening into the street. The only method of reaching the rear building was by entering this door, passing through the alley-way into the yard and crossing over it into the rear building which communicated

with no street, except the front street, and had no outside doors, except those opening into the yard. The entire property, including both buildings, was known as No. 160 Mott street. In that case as in the case at bar, the company had consulted its insurance map before issuing the policy and learned that there were two buildings upon the property, the location of each, and that the same street number applied to both, " the fundamental, if not the controlling, part of the description." The fire had damaged the rear building upon the premises. The court in the course of its opinion, adopting a " broad and more liberal construction of the provision," as later said in *Arlington Co.* v. *Colonial Assurance Co.,* 180 N. Y. 337, and reversing the trial court which had resolved the doubt in favor of the insurer, said: " We thus have a policy which, if it had been read before the fire by a person standing upon the premises and familiar with the buildings and the way they were occupied, would leave him in doubt whether the property insured embraced all the buildings or only a part. For this ambiguity the company is responsible because it prepared and executed the contract, and the language used is wholly its own. While it is the duty of the court to so construe the policy as, if possible, to give effect to every word used, if the sense in which they were used is uncertain and the meaning is ambiguous, that meaning should be given which is most favorable to the insured. (Cases cited.) As said by Mr. May in his work on Insurance, ' No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which declares that, in all cases, it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which, in making the insurance, it was his object to secure. When the words are, without vio-

29

Appellate Term, First Department, June, 1920. [Vol. 112.

lence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted.'"

So in the instant case the defendant should not be permitted to complain if by its own preparation of a policy and the inclusion therein of a term susceptible of doubt, it has rendered doubtful what it possessed in its power to make explicit, viz., whether the property insured embraced both buildings or only one. Had it investigated " it would have discovered the true location of the plaintiff's residence. Had it done so within a reasonable time and had there been any basis for claiming it had been mislead to its prejudice, it might have rescinded the contract and returned the premiums." *LeGendre* v. *Scottish Union & National Ins. Co.*, 95 App. Div. 562.

We find further support for our conclusion in the observation that, if the rear structure were not intended, no other building can answer the description of " extension;" and giving to each word in the policy presumptively an importance of meaning, we are forced to find that either this word was a futile generality without meaning, or that it was intended to be within the contract and to cover the building destroyed. In the one view, it must be treated as mere surplusage; in the other it has vitality and indicates intention. We should assume unless necessity otherwise compel, that the language used by parties was not intended to express an unintelligible idea, or that they vainly and designedly employed language which could have no application or possible reference to the subject matter at hand. The term being susceptible of reasonable construction, we should not ignore or reject it as a loose or immaterial expression.

Upon the facts of the case we hold that in giving effect to the word " extension " as embracing the

building damaged, we are interpreting the policy with full meaning ascribed to all its parts and without violence to the intention of the parties.

The judgment is, therefore, affirmed, with twenty-five dollars costs.

GUY and FINCH, JJ., concur.

Judgment affirmed, with twenty-five dollars costs.