FRANK B. SNYDER, PLAINTIFF IN ERROR, v. DWELL-
ING-HOUSE INSURANCE COMPANY, DEFENDANT IN
ERROR.

1. A policy of fire insurance provided: "This policy is made and ac-
cepted subject to the foregoing stipulations and conditions, together
with such other provisions, agreements or conditions, if any, as prop-
erly are or shall be endorsed hereon or added hereto, and no officer,
agent or other representative of this company shall have power to
waive any provision or condition of this policy." A loss occurred
August 9th, 1894. One L., the local agent of the company, partici-
pated in the adjustment of the loss, and advised the plaintiff that he
had nothing further to do until he heard from the company. The
plaintiff received no information from the company on the subject,
until, by a letter dated October 11th, he was notified that the company
disavowed liability upon the policy for the reason, among other things,
that proofs of loss had not been given to the company within thirty
days. *Held*—

1. That the phrase, "any provision or condition of the policy," was
in substance the same as the language, "terms and conditions of insur-
ance," in the policy construed in *Carson* v. *The Jersey City Insurance
Co.,* 14 *Vroom* 300.

2. That such a stipulation applies to those conditions and provisions
in the policy which relate to the formation and continuance of the
contract of insurance, and are essential to the binding force of the con-

tract while it is running, and does not apply to those conditions which are to be performed after the loss has occurred in order to enable the assured to sue upon his contract, and hence that, after the loss has happened, conditions in the policy with respect to notice of loss and preliminary proofs may be waived by parol, though the policy contains the stipulation above referred to.

2. A local insurance agent entrusted with policies of insurance in blank, and authorized to issue them upon the application of parties seeking insurance, is thereby clothed with apparent authority to bind the company in reference to any condition of the contract, whether precedent or subsequent, and may waive notice of proof of loss, and may bind the company by his admission in respect thereto.

3. In the construction of contracts of insurance, policies of insurance will be liberally construed to uphold the contract, and conditions in them which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy.

4. A policy of fire insurance contained a provision that it should be void if "there be kept, used or allowed on the above-described premises, naphtha or petroleum or any of its products of equal or greater inflammability than kerosene oil of legal standard (which last may be used for lights only, provided the oil be drawn and the lamps be trimmed and filled solely by daylight)." *Held,* that the words in parentheses import a regulation of the use of kerosene oil where used for lighting purposes, and will not be construed to prohibit its use for any other purpose than for lights.

On error to the Supreme Court. For opinion of the Supreme Court, see *ante p.* 18.

For the plaintiff in error, *Frank P. McDermott.*

For the defendant in error, *R. Wayne Parker.*

The opinion of the court was delivered by

DEPUE, J. This was an action on a policy of insurance against loss by fire, dated August 27th, 1892. The suit was tried in the Court of Common Pleas of Monmouth county, and resulted in a verdict for the plaintiff. The property insured was a dwelling-house situate at Freehold. The fire occurred August 9th, 1894. Notice of the loss was promptly given and was received by the company August 11th. The policy requires proof of loss, containing a statement setting

out several particulars and sworn to, to be rendered to the company within thirty days after the fire. Near the end of the policy is a clause that no suit or action on the policy shall be sustainable unless the insured shall have fully complied with all the requirements of the policy. The policy concludes as follows: "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions, if any, as properly are or shall be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy."

Proof of loss, such as required by the policy, was not furnished until the latter part of October, which was after the expiration of the thirty days after the fire. To justify the failure to furnish proofs of loss in season the plaintiff relied upon a waiver by agents of the company. The facts relied on for that purpose are these: Lockwood, the local agent of the company at Freehold, gave the company notice of the loss by a letter dated August 9th, saying also that the Phœnix company had a policy of $1,000 on the household furniture. On the 13th or 14th of August, Nichols, a special agent of the company, came to Freehold. Nichols testified that he came there as the company's special agent solely for the purpose of ascertaining the amount of the loss or damage. When Nichols arrived at Freehold, Mr. Walsh, an adjuster representing the Phœnix company, was there. Lockwood testified that Mr. Nichols said to him, in the presence of the plaintiff, "Lockwood, I have arranged with Mr. Walsh to adjust the loss, and I can go on to Philadelphia and save time;" that he, Walsh and the plaintiff then adjusted the loss at $1,100, and the plaintiff signed a paper agreeing to accept that sum from the defendant company. Lockwood further testified that he, at that time, asked the plaintiff if he had the specifications of the loss; that plaintiff said he did not have them then, but the company could have them at almost any time they desired; that he (Lockwood) then said to the plaintiff

he would wait to see what the company required further. The plaintiff testified that Lockwood, after the paper was signed, told him that he had nothing further to do until he heard from the company in regard to the insurance.

The force of this testimony arises from the fact that Lockwood participated in the adjustment of the loss and advised the plaintiff that he had nothing further to do until he heard from the company. The plaintiff received no information from the company on the subject until, by a letter dated October 11th, signed by the assistant secretary, he was notified that the company disavowed liability upon the policy, for the reason, among other reasons, that proofs of loss had not been given to the company within thirty days.

Lockwood testified that he was the resident representative of the company at Freehold and had charge of issuing policies; that the way policies were issued by him was that the policies were sent to him signed and in blank; that he was to fill up the policy, to issue insurance—either fire, lightning or tornado—sign them and deliver them to the insured, collect the premiums and forward the premiums, less his commissions, to the company. If the presentation of proofs of loss was capable of being waived otherwise than by agreement endorsed upon the policy, in compliance with its terms, Lockwood's agency was such that the waiver might be made by him, and his acts and assurances were such as were competent evidence of a waiver. The trial judge gave the instruction to the jury that proofs of loss might be waived by the company by acts and declarations which led the insured to believe that it will not insist upon such a requirement, and that an agent "entrusted with policies of insurance in blank, and authorized to issue them upon the application of parties seeking insurance, is thereby clothed with apparent authority to bind the company in reference to any condition of the contract, whether precedent or subsequent, and may waive notice of proofs of loss, and may bind the company by his admissions in respect thereto." With these instructions, the questions of fact arising from the evidence were left to the jury.

These instructions were in conformity with the principle adjudged in *Carson* v. *Jersey City Insurance Co.*, 14 *Vroom* 300. Upon these instructions the Supreme Court reversed the judgment. In the Carson case the language of the policy was that "no agent of this company is authorized in any respect to change the terms and conditions of this policy, and they shall be neither changed nor waived except in writing, signed by the president or secretary of the company." The principle adjudged in that case was that such a stipulation applies only to those conditions and provisions in the policy which relate to the formation and continuance of the contract of insurance, and are essential to the binding force of the contract while it is running, and does not apply to those conditions which are to be performed after the loss has occurred, in order to enable the assured to sue upon his contract, and hence that, after the loss has happened, conditions in the policy with respect to notice of loss and preliminary proofs may be waived by parol, though the policy contain such a stipulation as is above referred to. In the Supreme Court, the learned judge who prepared the opinion distinguishes this case from the Carson case in the fact that in this policy the phrase is "any provision or condition of the policy," whereas in the other case the language was "terms and conditions of insurance." We think this distinction without substance. The word *provision* is a word in common use to express the terms, stipulations and conditions in deeds, contracts, statutes and constitutions. "In law [the word *provision*], is a stipulation; a rule provided; a distinct clause in an instrument or statute; a rule or principle to be referred to for guidance, as the provisions of law, the provisions of the constitution, &c." *Cent. Dict., "Provisions."* Substantially the same definition is given in "Webster's Dictionary" and in the "Encyclopædic Dictionary." *Proviso*, when used, always implies a condition unless subsequent words change it to a covenant. 2 *Bouv. Dict.* 399, *"Proviso."* The word *provision*, in this paragraph, is meaningless if not synonymous with terms and conditions contained in the body of the policy, unless it be

limited to provisions endorsed upon the policy set out in the preceding member of the sentence. We think the instruction of the trial court, on this head, was correct, and that the reversing judgment of the Supreme Court should be reversed.

Another assignment of error appears in the record which was not considered in the Supreme Court. There was a kerosene oil-stove in the shed which was on the premises. The oil-stove was used for cooking. The fire broke out in close proximity to the stove. The lamp in the stove was then burning, but the fire was not caused by an explosion. The policy contains a provision that it should be void if "there be kept, used or allowed on the above-described premises, naphtha or petroleum or any of its products of equal or greater inflammability than kerosene oil of legal standard (which last may be used for lights only, provided the oil be drawn and the lamps be trimmed and filled solely by daylight)."

The only legal standard for petroleum or any of its products is that specified by the act of 1883. That act provides that "only such product of petroleum as will not flash at a less temperature or flash-test than one hundred degrees Fahrenheit, may be sold for lighting or illuminating purposes, except when the same is to be used in street lamps or open-air receptacles or in gas machines, in which case (as to petroleum or kerosene) there shall be plainly marked on the barrel, can or vessel in which the same is sold, &c., the words, 'Not for inside lights.'" *Gen. Stat.*, *p.* 2454. No standard is prescribed by this statute except for lighting or illuminating purposes—"inside lights." In fact, the kerosene oil used in the kerosene stove was of the standard of one hundred and fifty degrees Fahrenheit flash-test, which is above the standard mentioned in the statute.

The contention is that the policy, by force of the above provision, was avoided by the use of kerosene otherwise than in lamps for illuminating purposes. The result of this contention depends upon the construction and effect of the clause of the policy above set out. It is a settled rule in the con-

struction of contracts of insurance that policies of insurance will be liberally construed to uphold the contract, and conditions contained in them which create forfeitures will be construed most strongly against the insurer and will never be extended beyond the strict words of the policy.   *Carson* v. *Jersey City Insurance Co.*, *supra*.   In *Stone's Administrators* v. *United States Casualty Co.*, 5 *Vroom* 371, 375, Chief Justice Beasley said : "A qualification of the agreement so restrictive of the rights of the party insured ought not to be admitted unless the terms of the endorsement will bear no other rational interpretation.   If the terms used are imperfect, it is the fault of the defendants.   It is their contract, and the construction of it must be most strongly against them."   The principal member of this clause, "if there be kept, used or allowed on the above-described premises * * * petroleum or any of its products of equal or greater inflammability than kerosene oil of legal standard," is not broken by the use made of kerosene in this instance.   The defence rests upon the other member of the sentence which is enclosed in brackets, viz., "which last [*i. e.*, kerosene oil of legal standard] may be used for lights only, provided the oil be drawn and the lamps be trimmed and filled solely by daylight."   This member of the sentence imports a regulation of the use of kerosene oil when used for lighting purposes, and the words used are capable of a construction which would give to it no other effect.   If the insurer intended to prohibit the use of kerosene for any other purpose than for lights, it would have been easy to so express the prohibition in its policies.   Policies of insurance against fire are taken out by all classes of persons, educated and uneducated, and no rule of law is more salutary than that conditions in these instruments, expressed in terms ambiguous and capable of misleading, shall not be allowed to avoid the contract.   The member of the sentence within the brackets, to say the least, is confusing and ambiguous when taken in connection with the words which precede it, and should not be allowed to make void this policy under the circumstances of this case.

The judgment of the Supreme Court should be reversed, and the judgment of the Common Pleas restored.

*For affirmance*—GUMMERE, DAYTON.   2.

*For reversal* — DEPUE, LIPPINCOTT, LUDLOW, VAN SYCKEL, BOGERT, HENDRICKSON, NIXON.   7.