C. STANLEY SMITH, APPELLANT, v. FIDELITY AND DE-
POSIT COMPANY OF MARYLAND, RESPONDENT.

Submitted December 11, 1922—Decided March 5, 1923.

1. A policy of burglary insurance provided for an armed watchman
within the premises. There was endorsed on the policy the
"protection described" * * * will be "maintained in so far
'as is in the control of the assured.'" The merchandise stolen
and covered by the policy was owned by the assured but was
being sold in a building controlled by another company. An
armed watchman had not been on duty for three weeks before
the theft. The trial court *held* the insurer was not liable on the
policy, and on the undisputed facts directed a verdict in favor
of the insurer—*Held* not error.

2. The words above quoted, "protection described," &c., in connec-
tion with the provision for an armed watchman within the prem-
ises, mean something temporary, pertaining to the watchman,
such as sudden sickness, and the like, over which the assured had
no control. In the construction of a policy the entire policy in
all its parts must be considered, so that each clause shall have
some effect, when so construed, there is no ambiguity in the terms
of the policy.

3. The absence of an armed watchman within the premises for three
weeks exonerated the insurer from liability under the terms of
the policy.

On appeal from the Supreme Court.

For the appellant, *King & Vogt* and *Harold A. Price.*

For the respondent, *Oliver K. Day.*

The opinion of the court was delivered by

BLACK, J. There is but one controverted question on this
appeal. The true construction and application of two clauses
in a policy of burglary insurance. The trial resulted in the
direction of a verdict for the defendant. This is the error
assigned, as the ground of appeal. The facts are not in
dispute. Substantially, they are these; The policy was dated
December 4th, 1920. It contained these two clauses the
only ones out of which grew the suit. Under the head

Schedule (statements of assured) Warranties. (5) "An armed watchman with no other duties is employed within the 'said premises when not open for the transaction of business, who registers on a watchman's clock' [Yes or No, and if so state how often.] Who signals a central station as per endorsement." These blanks were not filled out, except the last, which was filled out "as per endorsement." The endorsement is, "For and in consideration of the premium it is hereby understood and agreed that the protection described at the following locations will be maintained during the policy period *in so far as is in the control of the assured."*

Other pertinent facts are, the policy ran from December 4th, 1920, to December 4th, 1921. The assured were A. & J. Engel Retail Fur Corporation and A. & J. Engel, Inc. The burglary or theft occurred sometime between 6 P. M. on May 25th, and 8 A. M. on May 26th, 1921, during the policy period. There had been no watchman within the premises for some three weeks before the burglary.

The assured had space in the building of the France-Devens store, located at Youngstown, Ohio, for selling their stock of goods. This was under an agreement dated May 1st, 1920, which was several months prior to the issuance of the burglary policy. This agreement provided for space on the second floor for the license and exclusive privilege of selling, etc. It provided, that the lessee or its employes shall not have access to or remain in the premises any other time than during the lessor's *(i. e.* France-Devens) regular business hours, except by or with the permission of the lessor; the lessee shall have no keys to the building.

On September 4th, 1920, before issuing the policy, the defendant company sent out an inspector, who had an interview with the vice president and general manager of the France-Devens Company in reference to the management of the business. From this interview, the inspector ascertained the fur department was run under the name of the France-Devens Company, but it was owned by the A. & J. Engel Retail Fur Corporation, the assured, that one night man was

employed within the premises. A few weeks before May 26th, 1921, about three, the night watchman left, and no other was provided for, until after the burglary. The record is not clear as to what was done, if anything, by the France-Devens Company to procure another night watchman. Nothing was done by the assured. No notice was given to the insurer.

The problem, therefore, for solution is, is the defendant company liable for the theft and burglary under the terms of the policy? Was it error for the trial court to direct a verdict for the defendant under the undisputed facts? We think both of these questions must be answered no.

The courts in dealing with the litigation growing out of policies of insurance have said:

It is a settled rule in the construction of contracts of insurance, that policies of insurance will be liberally construed in favor of the assured so as to uphold the contract; *Snyder* v. *Dwelling House Insurance Co.*, 59 *N. J. L.* 544; *Rickerson* v. *Hartford Fire Insurance Co.*, 149 *N. Y.* 313.

So, in the event of an ambiguity in the terms of the policy, a meaning should be given which is most favorable to the assured. *Rickerson* v. *Hartford Fire Insurance Co., supra; May Ins.*, ¶ 175; 1 *Joyce Ins.*, ¶ 221 (*2d ed.*); 9 *Corp. Jur.* 1096, ¶ 205.

But the law will not make a better contract for the parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce a contract as it is written. *Kupfersmith* v. *Delaware Insurance Co.*, 84 *N. J. L.* 271; 1 *Joyce Ins.*, ¶ 205.

The construction and effect of a written instrument is a matter of law to be determined by the court and not by the jury. *John Sommer Faucet Co.* v. *Commercial Casualty Insurance Co.*, 89 *N. J. L.* 693. These rules are applicable to policies of burglary insurance, so, is the rule, the entire policy in all its parts must be considered to the end, that, each clause shall have some effect. The object and purpose of the policy was burglary insurance. The policy by its terms provided, that an armed watchman was to be employed within the premises. It is conceded, that a provision for the employ-

ment of an armed watchman was material to, if not an essential part of the risk. *Axe* v. *Fidelity, &c., Co. of New York,* 239 *Pa. St.* 569, and that a failure to comply therewith prevents a recovery on the policy, *Id.,* except for the words in the endorsement, viz.: "The protection * * * will be maintained during the policy period in so far as is in the control of the assured." Applying the above principles to the concrete case before the court, how far, then, do these words modify or enlarge the liability of the insurer?

They, at least, plainly mean the arising of an emergency in the future, pertaining to the watchman, over which the assured would have no control, such as the watchman temporarily absenting himself from his post of duty without knowledge of the assured; his becoming suddenly ill and being forced to leave during the hours of his watch or his sudden leaving the employment without notice to the assured, the assured being unable to procure another watchman within a reasonable time and the like. Thus construed, there is no ambiguity in the two clauses of the policy. All its terms will be given effect. Such a construction is in harmony with the spirit and purpose of the policy. It gives a reasonable construction to each clause and does not nullify or do violence to any part of the policy. But, if the contention of the appellant is sound, viz., the absence of the night watchman for three weeks does not nullify the policy, then he could be absent for three months and so on indefinitely. The mere statement shows the fallacy of any such construction, because it entirely ignores or nullifies the fifth clause providing for an armed watchman, which is a part of the insurer's protection, provided for in its risk, on which the rate of the premium was determined.

There being no error in the record, the judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, SWAYZE, BERGEN, BLACK, KATZENBACH, WHITE, GARDNER, ACKERSON, JJ. 8.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER. KALISCH, VAN BUSKIRK, JJ. 5.