THE CITY MORTGAGE COMPANY, A BODY CORPORATE, PLAINTIFF, v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, A BODY CORPORATE, DEFENDANT.

Decided November 9, 1935.

For the plaintiff, *T. Raymond Bazley* and *Harold McDermott*.

For the defendant, *Charles H. Stewart*.

LAWRENCE, C. C. J. This is a suit on an "errors and omissions" fire insurance policy issued to plaintiff by defendant on December 19th, 1930. It was submitted to the court without a jury, by consent, at the Monmouth Circuit. The occasion for the action involves the total destruction by fire, on April 9th, 1931, of a dwelling house, situate on a lot of land at Long Branch, in which property plaintiff had a mortgage interest of $4,500. The meritorious question is whether the evidence supports plaintiff's claim under the terms of defendant's policy. The defense is that through the neglect of plaintiff specific insurance on the dwelling in question to the amount of its mortgage interest had become invalid and remained in that situation at the time of the fire. Hence no recovery could be had on it. (See *Bess Holding Co. et al.* v. *Importers and Exporters Insurance Company of New York,* 12 *N. J. Mis. R.* 119; 169 *Atl. Rep.* 536.

The pertinent provisions of the policy in suit are as follows:

"$250,000 on the insured's mortgage interest, subject to the terms, conditions and/or limitations of this contract, in buildings located within the limits of the State of New Jersey, covering loss to insured's mortgage interest caused by fire or lightning damages to building property as above described, in which the insured has subsisting mortgage interest, when and only when the insured's interest in said building property is not covered by specific fire and lightning insurance, because of errors and/or omissions in effecting such insurance, which result in (a) no specific insurance on said property, and/or (b) such specific insurance on said property being invalid. * * *

"2. Insured agrees to make every reasonable effort to secure and maintain valid specific fire and lightning insurance on each and all property covered hereby payable to the insured as mortgagee and in amounts not less than its mortgage loans thereon. * * *

"8. This insurance shall not be invalidated by any act or neglect of a mortgagor or owner of individual properties covered hereunder, nor by any foreclosure or other proceeding or notice of sale relating to said property, nor by any change in title or ownership of the property, nor by occupation of the premises for purposes more hazardous than are permitted by the individual fire and/or lightning policies covering building property in which the insured has a mortgage interest; provided, that in case the mortgagor or owner shall neglect to pay any premium due under specific policies covering the properties in which the mortgagee has interest, the mortgagee or trustee shall, on demand, pay the same.

"9. This is excess insurance and shall not be treated as contributing insurance with specific insurance."

Factually the circumstances giving rise to the suit are: On May 31st, 1927, one Walter Tarasovis was the owner of the dwelling house and the lot on which it stood. He executed a mortgage on the property to the plaintiff mortgage company for $4,500. On June 17th, 1927, he caused the building to be insured in the Importers and Exporters Insurance Company of New York (through its local agent) for $5,000, for a period of three years. A standard New Jersey

mortgagee clause was attached in favor of the mortgage company as its interest might appear, containing among other provisions a stipulation that the mortgagee would inform the insurance company of any foreclosure proceeding or change of ownership of the property which should come to its knowledge. Tarasovis sold the property thereafter to Milicent Lawrence, of which change of ownership the insurance company had no notice, with the result that on June 17th, 1930, the company, through its local agent, sent the mortgage company a renewal policy for a like term of three years, reciting Tarasovis as owner, with the usual standard form of mortgagee rider attached covering plaintiff's mortgage interest, and likewise containing the provision that any foreclosure proceeding or change of ownership which should come to its knowledge should be reported by it to the insurance company.

On March 12th, 1930, plaintiff began foreclosure proceedings on its mortgage. They were carried through to final decree and execution, and, on July 25th, 1930, having purchased it at the sale, the sheriff conveyed the property covered to plaintiff. On July 30th, 1930, it conveyed it to a subsidiary known as the Bess Holding Company, which in turn, on the same date, executed a bond and mortgage to plaintiff in the sum of $4,500, the amount of its earlier mortgage. These transactions were not reported by plaintiff to the insurance company, nor did it otherwise receive notice thereof, its policy remaining in its original form without alteration or notation of change of ownership or mortgage security. Because of its provisions, including that in the independent mortgagee clause attached, the failure of either the owner or the mortgagee to report the change of ownership and the execution of the new bond and mortgage invalidated the policy.

On December 19th, 1930, the defendant insurance company issued to plaintiff its "errors and omissions" policy, provisions of which have been heretofore stated. This was excess insurance and not contributing with specific insurance on the individual properties in which plaintiff had subsisting mortgage interests. As indicated, at the time this policy was issued the specific policy of the Importers and Exporters

Insurance Company had been invalidated; that is to say, while not canceled, because notice of the violation as to change of ownership of the property did not come to the insurance company until after a fire had destroyed the dwelling, the specific policy had become invalid several months before, by reason of the failure of plaintiff to inform the company of the foreclosure proceeding, the sale and change of ownership and the subsequent execution of a new bond and mortgage.

On April 9th, 1931, the dwelling house, which, with the land was then owned by Bess Holding Company, was completely destroyed by fire. The insuring company (Importers and Exporters Fire Insurance Company) refused to pay either the owner on the loss or plaintiff as mortgagee, because its policy had been invalidated. They instituted suit and were denied recovery for that reason. No appeal was taken and the judgment of no cause still stands. The evidence at the trial was that although plaintiff had had possession of the specific fire insurance policy in question and was charged with knowledge of its provisions, and the terms of the mortgagee clause in particular, it had done nothing whatever to either inform the insuring company of the change of ownership or to have a proper notation made on the policy as required. The result was that at the time of the fire it still carried the name of Tarasovis as owner and plaintiff as mortgagee and in that relation, that is to say, as the policy had originally been issued Tarasovis at the time was mortgagor and plaintiff mortgagee. When it expired it was renewed in like form. Plaintiff received it as it also had the original, but at no time made the slightest effort to have any change in ownership noted on either of the policies or the alteration in form of its mortgage interest. (See case cited above.)

Plaintiff now seeks to recover of defendant on its "errors and omissions" policy, alleging that the building at the time of the fire was not covered by valid specific insurance. The defense is that plaintiff is not entitled to recover because it violated the term of its policy whereby it agreed to make every reasonable effort to secure and maintain valid specific insurance on the dwelling, which, as disclosed by the evidence,

it did not do. It failed to cause the original or renewal policies of the specific insurance to be examined, remained inactive in that respect, and therefore did nothing whatever to secure and maintain valid specific insurance on the property involved. While it was argued in its behalf that this was an error or omission on its part, which it did not discover until after the fire, it is to be observed that mere passive inaction resulting in a failure to perform a duty is not an error or omission such as is contemplated by the term of the policy in suit. *State* v. *Vanderbilt*, 33 *N. J. L.* 38. By the same token, it cannot be fairly said, as also argued, that the institution of the suit on the renewal policy of specific insurance was or is evidence of "every reasonable effort" to secure and maintain valid specific insurance. Evidence of what plaintiff did or did not do prior to the institution of that suit controls.

In the construction of an insurance policy the entire policy in all its parts must be considered, so that each clause shall have effect. *Smith* v. *Fidelity and Deposit Co.*, 98 *N. J. L.* 534; 120 *Atl. Rep.* 322, and cases cited. Although it is the settled rule that policies of insurance will be liberally construed in favor of the assured so as to uphold the contract (*Snyder* v. *Dwelling House Insurance Co.*, 59 *N. J. L.* 544; 37 *Atl. Rep.* 1022), and, in the event of an ambiguity in the terms, a meaning should be given which is most favorable to the assured (*Smith* v. *Fidelity and Deposit Co., supra*); still the law will not make a better contract for the parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other; so that where a party by his own contract creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract. He that agrees to do an act should do it, unless absolutely impossible. He should provide against contingencies in his contract. The law will not insert, for the benefit of one of the parties, by construction, an exception which the parties have not, either by design or neglect, inserted in their engagement. *School Trustees* v. *Bennett*, 27 *N. J. L.* 513; *Kupfersmith* v. *Dela-*

*ware Insurance Co.,* 84 *Id.* 271; 86 *Atl. Rep.* 399. While paragraph 8 of the policy of defendant provides that the insurance should not be invalidated by any act or neglect of a mortgagor or owner of individual properties covered, nor by any foreclosure or other proceedings or notice of sale relating thereto, nor by any change in title or ownership of the property, this does not operate to the benefit of plaintiff who, in paragraph 2, agreed to make every reasonable effort to secure and maintain valid specific fire insurance on each and all property covered payable to it as mortgagee and in an amount not less than its mortgage loans thereon. Since it did not do so, it cannot recover in the present suit.

Judgment may be entered in favor of defendant and against plaintiff of no cause.